ALICE MEDEIROS, MARGARET MCGUIRE, TIM SULLIVAN, ROBERT PETRICCI, RALPH ROUBIQUE, JIM BLAKEY, BARBARA BELL, ROLF W. SALZER, WILLIAM REICH, STEVE PHILLIPS, RANDAL LEE, RUSSELL E. RUDERMAN, JAMES JOHNSON, CLIVE CHEETHAM, BRADLEY SORTE, CELINE LOGAN, (ATTORNEY IN FACT) FOR DONIE LOGAN, GREGORY C. POMMERENK and DEBORAH E. POMMERENK, DELAN PERRY, JENNIFER PERRY, and NELSON HO, CITIZENS FOR RESPONSIBLE ENERGY DEVELOPMENT WITH ALOHA AINA (CREDAA), and PELE DEFENSE FUND, a Hawaii non-profit corporation, Appellants, v. HAWAII COUNTY PLANNING COMMISSION, GARY MIZUNO, in his capacity as Chairman of the Hawaii County Planning Commission, JEANNE COMER, MARION BUSH, FRED Y. FUJIMOTO, DENNIS B. HOLT, TOMMY ISHIMARU, PHILLIP "MIKE" LUCE, TOM POY, and NEMESIO SANCHEZ, in their capacity as members of the Hawaii County Planning Commission, and HAWAII NATURAL ENERGY INSTITUTE, UNIVERSITY OF HAWAII, and THE RESEARCH CORPORATION OF THE UNIVERSITY OF HAWAII, Respondents

NO. 14087

(GRP NO. 89–1)

SEPTEMBER 11, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

## OPINION OF THE COURT BY HEEN, J.

Appellants Delan Perry, Jennifer Perry (the Perrys), and Nelson Ho (collectively Appellants) appeal from Appellee Hawaii County Planning Commission's (Commission) August 15, 1989 approval of a geothermal resource permit (the permit) authorizing Appellees Hawaii Natural Energy Institute and the Research Corporation of the University of Hawaii (Applicants) to drill four exploratory geothermal wells in the East Rift Zone of the Puna District on the Island of Hawaii.[1] We affirm.

### I.

Hawaii Revised Statutes (HRS) § 205–5.1 (Supp. 1989) authorizes the issuance of geothermal resource permits to allow geothermal development activities in geothermal resource subzones (Subzones) established within urban, rural, agricultural, and conservation districts by the Board of Land and Natural Resources (Board) in accordance with the procedures set forth in HRS § 205–5.2 (1985 & Supp. 1989). The legislative purpose of HRS §§ 205–5.1 and –5.2 is to "assist in the location of geothermal resources development in areas of the lowest potential environmental impact." Act 296, § 1, 1983 Haw. Sess. Laws 636. Geothermal development activities in Subzones within conservation districts are governed by the Board, while such activities within the Subzones in urban, rural, and agricultural districts are governed by the counties under appropriate statutes, ordinances or rules not inconsistent with §§ 205–5.1 and –5.2. HRS § 205–5.1(c). Where

---

[1] Appellants' briefs were filed *pro se*. On April 30, 1990, we entered an order permitting Thomas Luebben, Esq. (Luebben), to appear *pro hac vice* on behalf of Appellant Jennifer Perry. Appellant Delan Perry and Luebben presented oral argument.

a county's general plan and zoning ordinances do not contain provisions relating to geothermal development activities, a county's planning commission may issue a geothermal resource permit for such use, unless the county council has authorized some other agency to do so by ordinance. *Id.*

The general procedures for considering geothermal resource permit applications by the counties are established by HRS § 205–5.1(e) and (f) which read as follows:

(e) If geothermal development activities are proposed within agricultural, rural, or urban districts and such proposed activities are not permitted uses pursuant to county general plan and zoning ordinances, then after receipt of a properly filed and completed application, including all required supporting data, the appropriate county authority shall conduct a public hearing. Upon appropriate request for mediation from any party who submitted comment at the public hearing, the county authority shall appoint a mediator within five days. The county authority shall require the parties to participate in mediation. The mediator shall not be an employee of any county agency or its staff. The mediation period shall not extend beyond thirty days after mediation started, except by order of the county authority. Mediation shall be confined to the issues raised at the public hearing by the party requesting mediation. The mediator will submit a written recommendation to the county authority, based upon any mediation agreement reached between the parties for consideration by the county authority in its final decision. If there is no mediation agreement, the county authority may have a second public hearing to receive additional comment related to the mediation issues. Within ten days after the second public hearing, the county authority may

receive additional written comment on the issues raised at the second public hearing from any party.

The county authority shall consider the comments raised at the second hearing before rendering its final decision. The county authority shall then determine whether a geothermal resource permit shall be granted to authorize the geothermal development activities described in the application. The appropriate county authority shall grant a geothermal resource permit if it finds that applicant has demonstrated that:

(1) The desired uses would not have unreasonable adverse health, environmental, or socio–economic effects on residents or surrounding property;

(2) The desired uses would not unreasonably burden public agencies to provide roads and streets, sewers, water, drainage, school improvements, and police and fire protection; and

(3) That there are reasonable measures available to mitigate the unreasonable adverse effects or burdens referred to above.

Unless there is a mutual agreement to extend, a decision shall be made on the application by the appropriate county authority within six months of the date a complete application was filed; provided that the time limit may be extended by agreement between the applicant and the appropriate county authority.

(f) Requests for mediation shall be received by the board or county authority within five days after the close of the initial public hearing. Within five days thereafter, the board or county authority shall appoint a mediator. Any person submitting an appropriate request for mediation shall be notified by the board or county authority of the date, time, and place of the mediation conference by

depositing such notice in the mail to the return address stated on the request for mediation. The notice shall be mailed no later than ten days before the start of the mediation conference. The conference shall be held on the island where the public hearing is held.

An authority's decision on a geothermal resource permit application pursuant to a public hearing or hearings is appealable directly to the supreme court for review in accordance with the provisions of HRS § 91–14(b) and (g) (1985).[2] However, the decision is not subject to a contested case hearing. HRS § 205–5.1(g).[3]

On January 12, 1988, the Commission enacted Rule 12 (Rule 12) of its Rules of Practice and Procedure (1988), establishing its procedures governing geothermal resource permit applications. In essence, Rule 12 mirrors HRS § 205–5.1(e) and (f), but sets forth in more detail what an application must contain and how it will be processed.

## II.

HRS § 91–14(g) establishes the standard of review of an administrative decision.[4] However, an administrative agency's

---

[2] The case was assigned to this court pursuant to Hawaii Revised Statutes (HRS) § 602–5(8) (1985).

[3] HRS § 205–5.1(g) (Supp. 1989) provides:

(g) Any decision made by an appropriate county authority or the board pursuant to a public hearing or hearings under this section may be appealed directly on the record to the supreme court for final decision and shall not be subject to a contested case hearing. Sections 91–14(b) and (g) shall govern the appeal, notwithstanding the lack of a contested case hearing on the matter. The appropriate county authority or the board shall provide a court reporter to produce a transcript of the proceedings at all public hearings under this section for purposes of an appeal.

[4] HRS § 91–14(g) (1985) reads as follows:

decision is accorded a presumption of validity, and the appellant bears the heavy burden of making a convincing showing that the agency decision is invalid because it is unjust and unreasonable in its consequences. *Williams v. Hawaii Hous. Auth.*, 5 Haw. App. 325, 690 P.2d 285 (1984). The administrative agency's findings of fact are reviewable for clear error, and its conclusions of law are freely reviewable. *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw. App. ___, 751 P.2d 1031 (1988).

## III.

On January 31, 1989, Applicants applied to the Commission for permission to drill four Scientific Observation Holes (Holes), numbered 1 through 4, in the Subzone established by the Board within the Kilauea East Rift Zone. According to the application, each Hole will be approximately four inches in diameter and 4,000 feet deep, and will be located on approximately one quarter acre of land. The application states in part:

> The [Holes] are for scientific observation purposes only. The [H]oles will not be flow–tested or produced. The information to be gained from the [Holes] will provide an assessment of subsurface geological conditions,

---

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

groundwater level and composition, temperature, drilling conditions, an inventory of possible mineral and geothermal resources, and an eruptive history of the island to the depth drilled. The [Holes], in combination with existing geothermal wells or geothermal wells to be drilled by producers in the future, can be instrumented to provide data relating to reservoir productivity. By injecting water into the [H]oles, estimates can be made as to possible reservoir conditions and productivity.

\* \* \*

The [H]oles will not be flow–tested or produced, so any gases associated with geothermal fluids, if encountered, will not be vented to the atmosphere.

In general terms, the application describes the locations of the Holes, anticipated surface disturbances caused by the drilling activities, provisions for waste disposal, geology and geologic hazards, existing meteorological, ambient air, and noise data, and measures to be taken for environmental protection. The application states that: socio–economic impacts will be negligible, and there will be no impact on the public infrastructure; hydrogen sulfide monitors will be in operation at the site; Applicants will comply with all regulations regarding environmental monitoring; and employees will receive instructions on safety. Finally, the application provides a timetable for the project and states that provisions will be made for supplying progress reports to the Commission.

The public hearing began on April 11, 1989. At the public hearing a member of the staff of the Hawaii County Planning Department (Planning Department) recommended approval of the application with a number of conditions. Twenty–nine people, including Appellants, also spoke. All speakers, except the Planning Department's staff member, were limited to three minutes, and only Commission members were allowed to question any of the speakers. Mr. Harry Kim, Director of Civil Defense for Hawaii

County, spoke and requested mediation. At the close of the proceedings, the Commission voted to continue the hearing at a later date.

When the hearing resumed on May 9, 1989, forty-five people spoke, including the Perrys. The speakers were limited to five minutes each and, again, the audience was not allowed to question any of the speakers. At the close of the hearing the Commission's chairman announced that all parties who wanted mediation should submit written requests within five days. Numerous persons, including the Perrys, requested mediation.

On May 19, 1989, the Commission appointed Dee Dee Letts (Letts), Assistant Director of the Program on Alternative Dispute Resolution of the State Judiciary, as mediator. Subsequently, Letts was joined by Dr. Kem Lowry of the University of Hawaii and Richard Spiegel of the West Hawaii Mediation Service as "co-mediators." The first mediation meeting was held on June 7, 1989, and the last on July 6. On July 10, 1989, the president of the Kapoho Community Association (Association) wrote a letter to the Commission pointing out that, during mediation, Applicants revealed there will be hydrogen sulfide emission from the wells, contrary to their statement in the application. The Association requested a contested case hearing. On July 13, 1989, the mediators submitted their final report, outlining the items of agreement and disagreement among the participants.

On August 15, 1989, the Commission approved the permit and Appellants appealed. The permit contains the findings required by HRS § 205-5.1(e)(1), (2) and (3), *supra*, and establishes 26 conditions governing the operation. The conditions require that, prior to any grubbing or grading, Applicants must mark the access and site boundaries and permit no equipment beyond those boundaries. Applicants are required to conduct a survey of flora and fauna at all sites and submit the results to the Planning Department; submit plans to the Commission for

monitoring noise and air quality, and for emergency actions; and maintain permanent records of emission testing and measurement, and file them with the Planning Department. Unabated open venting of geothermal steam is prohibited. Applicants are required to maintain a meteorological station and provide data from the station to the Planning Department. Applicants must also submit detailed quarterly status reports to the Commission on their activities. The permit establishes noise limitations, requires waste disposal sites, and mandates that sumps must be purged in a manner approved by the Department of Health. Condition no. 25, which was added by the Commission after mediation, requires Applicants to drill Hole no. 4 first and provide status reports to the Commission on Applicants' compliance with the permit's conditions. In sum, the conditions severely control Applicants' exploration activities and allow close monitoring by the Commission.

## IV.

Appellants wage a four-pronged attack on the permit. First, they argue that HRS § 205-5.1(g)'s provision that the authority's decision "shall not be subject to a contested case hearing" violates their constitutional right to due process of law under Article I, § 5 of the Hawaii State Constitution. [5] Second, they assert that the procedures employed by the Commission violated their due process rights. Third, they contend that the Commission violated the provisions of Rule 12. Fourth, they argue that the Commission's decision is based on an inadequate factual record. We find no merit in Appellants' arguments.

---

[5] Article I, § 5 of the Hawaii State Constitution reads in pertinent part as follows:

> No person shall be deprived of life, liberty or property without due process of law[.]

## A.

HRS § 205-5.1 was enacted in 1983. Act 296, § 3, 1983 Haw. Sess. Laws 636, 637–38. In 1984, the statute was amended to provide for contested case hearings on applications submitted under the statute.[6] Act 151, § 2, 1984 Haw. Sess. Laws 278, 280. In 1987, the legislature deleted the provisions for contested case hearings and substituted public hearings and a mediation process. Act 378, § 1, 1987 Haw. Sess. Laws 1198, 1200–01. The purpose of the change was "to provide for a simpler procedure to consider and act on permits for geothermal development before state and county agencies." Sen. Stand. Comm. Rep. No. 1118, in 1987 Senate Journal, at 1387.

Appellants argue that "[t]he ability to cross examine witnesses and the preservation of arguments for the reviewing body to assess are key to the most basic citizen rights as included in the Hawaii State Constitution Bill of Rights[.]" They contend that a contested case hearing is essential to the preservation of those rights.

Applicants argue that Appellants' interests are aesthetic and environmental and are not "property" in the context of due process. However, the record shows that the Perrys own and farm property abutting the land covered by the permit.[7] It is at least arguable that the Perrys' use of their property might be so severely curtailed by Applicants' geothermal activities as to constitute a deprivation of property. In any event, we need not decide whether or not Appellants have a protectible property interest. This is for the reason

---

[6] A contested case is

a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.

HRS § 91-1(5) (1985).

[7] Appellant Nelson Ho represented the Sierra Club below. The record does not reveal whether he owns property in the area.

that, even if Appellants do have a protectible property interest, HRS § 205–5.1 satisfies due process requirements.

A contested case hearing is not essential to the guarantee of due process. The legislature has inherent power to establish the procedure for a particular type of case. *See Marcello v. Bonds*, 349 U.S. 302, 75 S. Ct. 757, 99 L. Ed. 1107, *reh'g denied*, 350 U.S. 856, 76 S. Ct. 38, 100 L. Ed. 761 (1955).

> In *Marcello*, the Court recognized that Congress often had good reasons for requiring different procedures for resolving different types of disputes because of the nature and context of the decisions to be made. Congress is free to establish different decision–making procedures for different agencies and different types of decisions as long as the procedures it establishes do not fall below the minimum procedures required by due process. Since *Marcello*, the Court determines the adequacy of the procedures used by an agency through independent analysis of the requirements of statutes and of the Constitution.

R. Pierce, S. Shapiro & P. Verkuil, *Administrative Law and Process* § 6.4, at 281 (1985).

> Due process is not a fixed concept requiring a specific procedural course in every situation. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972). The full rights of due process present in a court of law, including presentation of witnesses and cross–examination, do not automatically attach to a quasi-judicial hearing. *See Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Arnett v. Kennedy*, 416 U.S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974). The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful

time and in a meaningful manner before governmental deprivation of a significant property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976); *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 605–606, 95 S. Ct. 719, 722, 42 L. Ed. 2d 751, 756–57 (1975).

Determination of the specific procedures required to satisfy due process requires a balancing of several factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail. *Mathews v. Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903, 47 L. Ed. 2d at 33; *Silver v. Castle Memorial Hosp.*, 53 Haw. [475,] 484, 497 P.2d [564,] 571 [1972].

*Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989).

Considering the factors set forth in *Sandy Beach*, we find that, even assuming Appellants have a property interest requiring protection under the due process clause, the procedures established by the statute are sufficient to protect Appellants' property from erroneous deprivation.

The state government is keenly interested in exploring and developing geothermal energy as a cheaper alternative to oil as a source of electrical energy for the general populace. The legislature has decided that geothermal energy development is so important that it should not be delayed by protracted contested case hearings. However, mindful of the potential adverse impact of geothermal energy development on the surrounding properties, the legislature has required the appropriate authority to provide notice, an

opportunity to be heard, and a record of the proceedings for appellate review.[8]

The public hearing, together with the mediation process, was viewed by the legislature as a reasonable alternative to the contested case. Indeed, since it allows the interested parties the opportunity to meet with the developers on a one–to–one basis and to attempt to resolve their differences, mediation may, as a practical matter, provide the residents and property owners with greater impact on the decision than a contested case. The fact that the differences between the Applicants and the affected property owners may not always be resolved in favor of the property owners does not mean that the process fails to pass constitutional muster. The constitution guarantees the right to be heard, not the right to have one's views adopted. Neither does the constitution establish the contested case as the only forum for ensuring a property owner's right to be heard. *See Sandy Beach, supra.*

Here, Appellants were afforded a hearing and an opportunity to present testimony and evidence. They have not convinced us that a contested case hearing would have given them any further

---

[8] HRS § 205–5.1(h) establishes the following as the record on appeal:

(1) The application for the permit and all accompanying supporting documents, including but not limited to: reports, studies, affidavits, statements, and exhibits.

(2) Staff recommendations submitted to the members of the agency in consideration of the application.

(3) Oral and written public testimony received at the public hearings.

(4) Written transcripts of the proceedings at the public hearings.

(5) The written recommendation received by the agency from the mediator with any mediation agreement.

(6) A statement of relevant matters noticed by the agency members at the public hearings.

(7) The written decision of the agency issued in connection with the application and public hearings.

(8) Other documents required by the board or county authority.

protection, and we have no doubt that it would have considerably burdened the process.

In the final analysis, a geothermal permit proceeding is essentially a zoning matter. Historically, and universally, such matters have been decided after notice and a public hearing. We are not aware of any precedent for holding that the constitution requires a contested case hearing on a zoning change application.

### B.

Appellants further argue that, even if the statute meets due process requirements, the procedures actually employed by the Commission did not provide them with the opportunity to be heard in a meaningful manner:

Appellants assert the following as constitutional error:

(1) time limitations were imposed on the testimony at the public hearing;

(2) public comments on the procedures employed by the Commission were not accepted;

(3) the request for a second hearing was denied;

(4) the parties had no voice in selecting the mediator; and

(5) strict time constraints were imposed on the mediation process. [9]

We find that the complained of Commission actions did not violate Appellants' due process rights.

The participants at the public hearing were allowed to speak and present written evidence. It was not unreasonable to limit the speaking time, since testimony at such large public hearings tends

---

[9] Appellants also re-asserted that the Commission unconstitutionally deprived them of a right to cross-examine Applicants. We have already addressed that issue and will not discuss it again here.

to be repetitious.  *See In re Haw. Elec. Light Co.*, 67 Haw. 425, 690 P.2d 274 (1984).

Since the Commission's procedures were lawful, we do not think it was error to disallow public comment on them.

A second hearing was not necessary.  Appellants argue that Applicants' revelation during the mediation process that the Holes would emit hydrogen sulfide gas should have prompted the Commission to hold a second hearing.  However, one of the conditions of the permit is that, prior to the start of any drilling, Applicants will submit and get the Planning Department's approval for an air monitoring plan, which must be operational in all phases of the project.  The condition is obviously meant by the Commission to address the issue of gaseous emissions, and a second hearing was not necessary.

The time constraints in the mediation process were in accord with the dictates of HRS § 205–5.1(e).  However, Appellants argue that, although they were required to share the cost of mediation, they were not given a voice in the selection of the mediators.  We do not believe it is essential to due process that Appellants participate in naming the mediator or mediators.  Appellants' due process rights are protected so long as the selection process and the chosen mediator are unbiased.  Appellants do not claim the mediators were biased or prejudiced and do not claim to have been prejudiced by the Commission's selection.

## C.
### 1.

Appellants argue that the application · violates Rule 12–3(b)(2)(B)'s requirement that the application describe "the scope of the planned activities and . . . the . . . reasons for requesting the permit."  They contend that the application should have stated specifically that the purpose of the project is to confirm the

geothermal base and stimulate geothermal development. In addition to the language quoted above in Part III, the application states, "[t]he information to be gained from the [Holes] will provide an assessment [and] inventory of possible mineral and geothermal resources[.]" However, Appellants argue that the application should have described the involvement of private industry in the overall development of geothermal energy. They assert that if the impact of that involvement had been addressed in the environmental assessment filed by Applicant in accordance with HRS chapter 343, it would have militated against the assessment that the project would have no adverse effects on the environment and, presumably, have required an environmental impact statement. [10] The argument is without merit.

It is common knowledge that private entrepreneurs are interested in developing the geothermal resources in the Puna/Ka'u area. Applicants' project's potential impact is unquestionably far reaching in terms of providing data for area-wide geothermal development. However, the general impact of geothermal development has been addressed by the legislature, which has decided that, on balance, the long-range benefits from geothermal energy development outweigh the negative environmental effects. The

---

[10] HRS § 205–5.1(c) states that "[c]hapter[] . . . 343 [relating to environmental impact statements] shall apply as appropriate." In March 1989, in accordance with HRS § 343–5(b) (Supp. 1989), Applicants filed an "Environmental Assessment and Negative Declaration," which found that the project would have no long-term adverse effects on the environment if conditions were imposed in the permit process and other mitigating measures were taken. The assessment concluded that an environmental impact statement is not required, and the Commission did not require one.

Appellants assert as error in this case the lack of an environmental impact statement and the allegedly inadequate environmental assessment. However, HRS § 343–7(b) (1985) limits the period for filing a judicial challenge to a determination not to require an environmental impact statement to 60 days after the public is informed of the determination. No challenge was instituted in this case, and we do not address the issue.

relevant inquiry for the Commission in this case was the immediate environmental impact of Applicants' project, and a description of the private sector's use of the information gained from this project or involvement in geothermal development was not necessary under Rule 12.

2.

Appellants' argument that the mediator unilaterally extended the mediation period and did not submit a recommendation in violation of Rule 12 is not supported by the record.

D.

Finally, our examination of the record indicates that Appellants' point on appeal that the decision is based on an inadequate factual record is utterly without merit. Applicants presented the Commission with the factual description of its operations and procedures, as well as its assessment of the project's impact on the surrounding environment and proposals for mitigating any unreasonable impact. Appellants and other participants presented their counter–assessments. The record supports the Commission's decision.

Affirmed.

*Delan Perry*, appellant, pro se (*Jennifer Perry* and *Nelson Ho*, appellants, joined him on the briefs).

*Thomas E. Luebben*, pro hac vice (Anthony L. Ranken, of counsel), for appellant Jennifer Perry.

*Frederick Giannini*, Deputy Corporation Counsel, County of Hawaii, for Hawaii County Planning Commission.

*Annette Y.W. Chock*, Deputy Attorney General, for Hawaii Natural Energy Institute, University of Hawaii, and The Research Corporation of the University of Hawaii.