PELE DEFENSE FUND, a Hawaii non–profit corporation; MOANIKEALA AKAKA, Trustee, Office of Hawaiian Affairs; ALICE MEDEIROS; CITIZENS FOR RESPONSIBLE ENERGY DEVELOPMENT WITH ALOHA AINA (CREDAA); WAʻA WAʻA COMMUNITY ASSOCIATION; BONNIE BATOR; STEVE PHILIPS; GREGORY POMMERENK; DEBORAH POM-MERENK; PATRICE MONFREDA; ROBERT PETRICCI; RANDALL LEE; DELAN PERRY; JENNIFER PERRY; MARGARET McGUIRE; DAVID ZEISSLER; DUANE HANSON; AURORA MAR-TINOVITCH; JIM BLAKEY; WILLIAM REICH; RUSSELL RUDERMAN; ANDY SARHANIS; and RON FUJIYOSHI, Appellants, v. PUNA GEOTHERMAL VENTURE, Respondent

NO. 14197

(GRP NO. 87–1)

SEPTEMBER 12, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

204

OPINION OF THE COURT BY HEEN, J.

Appellants Pele Defense Fund, Robert Petricci, Steve Philips, Gregory Pommerenk, Deborah Pommerenk, Delan Perry, and Jennifer Perry (Appellants)[1] appeal from the Hawaii County Planning Commission's (Commission) award of a geothermal resource

---

[1] On February 28, 1990, the supreme court dismissed the appeals of the other appellants named in the caption for their failure to file opening briefs.

permit (the permit) to Respondent Puna Geothermal Venture (Respondent) on October 3, 1989.[2] We affirm.

After Respondent submitted an amended application to the Commission for a geothermal resource permit on March 28, 1989, the Commission scheduled a public hearing for June 6, 1989. Subsequently, Respondent filed proof of its compliance with the notice of public hearing requirements of Rule 12–5(c) of the Commission's Rules of Practice and Procedure (1988).[3] At the June 6, 1989 hearing, some of the Appellants appeared and testified. The hearing was then officially closed. Thereafter, requests for mediation were submitted pursuant to Hawaii Revised Statutes (HRS) § 205–5.1(e) (Supp. 1989). On June 29, 1989, Mr. Peter S. Adler, Director of the Program on Alternative Dispute Resolution of the State Judiciary, accepted appointment as mediator. The first mediation session was held on July 5, 1989. The Commission

---

[2] Although the Hawaii County Planning Commission is not named as an appellee, it filed an answering brief and participated in oral argument.

[3] Rule 12–5(c) of the Rules of Practice and Procedure of the County of Hawaii Planning Commission (1988) reads in part:

**Hearing and Notification**

\* \* \*

(c) Promptly after the Planning Director fixes a date for the public hearing and at least 15 days before the date of the public hearing, the applicant shall mail a notice of the hearing to owners of interests in properties, as shown on the current real property tax rolls at the County Real Property Tax Office, within a minimum of three hundred feet of the perimeter boundary of the property for which a permit is being requested (or as determined by the Planning Director), and to other interested persons or groups as may be determined by the Planning Director. The applicant shall also make a reasonable attempt or best effort in notifying residents within one thousand feet of the perimeter boundary of the property of the public hearing. Such notice shall state:

(1) Name of the applicant;
(2) Precise location of the property involved;
(3) Nature of the proposed geothermal development activities; and
(4) Date, time, and place of the hearing.

approved the mediator's request to extend the thirty day mediation deadline, HRS § 205–5.1(e), and mediation ended on August 17, 1989. Not all Appellants participated in the mediation, and Appellant Pele Defense Fund withdrew from the process on July 19, 1989. The mediator's report, submitted on August 21, 1989, recommended that the Commission attach 48 conditions to any permit it might issue. [4]

Upon receiving the mediator's report, the Commission scheduled a second public hearing for August 28, 1989, and sent written notices in accordance with Rule 12–5(c), *supra*. At the close of the second hearing, at which 36 people spoke, the Commission continued the hearing to September 19, 1989. At the September 19, 1989 hearing, 37 people spoke. Written comments and materials were received by the Commission during both public hearings, and in the period between the hearings. At the close of the September 19, 1989 hearing, the Commission voted to approve the permit. The formal document was issued on October 3, 1989, with 51 conditions attached. Appellants timely filed their notice of appeal on November 2, 1989.

## I.

Initially, Appellants argue that this matter is not ripe for appeal, since it has not been shown that condition 51 attached to the permit can be fulfilled. Condition 51 reads as follows:

Prior to the issuance of the first building/construction permit under this Geothermal Resources Permit (GRP) by the County of Hawaii, the State of Hawaii and the permittee shall each contribute towards a Geothermal

---

[4] Unlike the application in *Medeiros v. Hawaii County Planning Comm'n*, 8 Haw. App. 183, 797 P.2d 59 (1990), the Hawaii County Planning Department staff did not recommend any conditions prior to mediation.

Asset Fund or other appropriate existing fund for the purposes of geothermal impact mitigation efforts within the District of Puna. The permittee's initial contribution to the fund shall be a sum of $60,000, due within thirty (30) days after the effective date of this GRP permit, and annual sums of $50,000 due on or before the anniversary date of this GRP permit over a period of eight (8) consecutive years thereafter for a total of $460,000. Annual contributions thereafter shall be determined between the permittee and the State of Hawaii or $50,000 annually, whichever is greater. The State's initial annual contribution to the Geothermal Asset Fund shall be the net revenues derived from the resources generated by the HGP–A well, or a similar amount from other State funding sources less any allocations entitled to the Office of Hawaiian Affairs and operations and maintenance costs. In the event that future enabling legislation provides for a percentage of the State's geothermal royalties to be allocated to the County, upon concurrence with the County Council, said royalties may also be deposited to the fund. The administration and expenditure of assets from this Geothermal Asset Fund shall be in accordance with rules, regulations and procedures developed for that purpose by the County in accordance with Chapter 91, *Hawaii Revised Statutes*, and with participation of Puna residents or representatives thereof, which shall include, but not be limited to, provisions and criteria to enable the first priority of distribution for temporary or permanent relocation of those property owners who are found, in accordance with criteria established in the rules, to be adversely impacted by the activities authorized, provided that such relief is applied for within a period of one (1) year of the impact. A priority list of impact mitigation projects may

be established by the County Council or agency designated by the Council in conjunction with Puna residents or designated representatives thereof, with the exception of upgrading existing subdivisions in the Puna District to current subdivision standards and specifications of the County of Hawaii. Should any other district(s) of the County of Hawaii be proved to be negatively impacted by activities authorized under this or any other subsequent GRP, that district shall receive a pro rata share of the fund assets as may be determined by the County Council or agency designated by the Council with expenditures to follow a prioritized schedule determined as outlined above. The rights granted to the permittee shall not be conditioned upon any contribution or further participation by the State in the fund nor with respect to the creation, management, and operation of the fund other than set forth above.

Appellants argue that neither the governor nor the Department of Land and Natural Resources has legal authority to contribute money to the Geothermal Asset fund established by condition 51; consequently, Respondent cannot act under the permit until the legislature authorizes such payments.[5] Appellants' argument is without merit.

Condition 51 is similar to many of the other 50 conditions of the permit in that it is prospective in nature. For example, Respondent is required to submit status reports pursuant to conditions 4

___

[5] On June 1, 1990, Appellants filed a Motion for Remand and Leave to Present Additional Evidence (Motion). In a supporting memorandum, Appellants noted that by means of a proviso in the supplemental budget, Act 299, § 70, 1990 Haw. Sess. Laws, the legislature authorized the Department of Land and Natural Resources to advance $250,000 to the Geothermal Asset Fund. The Motion requested the remand in order to allow Appellants to present, *inter alia*, the legislation to the Commission and for a determination whether the legislation satisfies condition 51. On August 6, 1990, we denied the Motion.

and 5, submit environmental monitoring data under condition 6, maintain records in accordance with condition 7, and submit copies of approved permits from all applicable federal, state, and county agencies before initiating construction of the project under condition 25. Such conditions do not *per se* affect the finality of the approval of the permit for purposes of appeal. *See Mahuiki v. Planning Comm'n*, 65 Haw. 506, 654 P.2d 874 (1982).

Whether or not condition 51's terms have been complied with becomes pertinent when Respondent applies for its first building or construction permit. Presumably, it will not be able to obtain any permit unless condition 51 has been met. In that event, condition 25 prevents Respondent from commencing any work. Also, if condition 51 has not been met, Respondent will be required to correct the non–compliance. Rule 12–10(b). [6] In the event they do not, the Commission is authorized to revoke or modify the permit. Rule 12–10(d). [7]

## II.

Appellants further argue that HRS § 205–5.1 violates their due process rights under the Fourteenth Amendment of the United

---

[6] Rule 12–10(b) reads in pertinent part:

    (b)   [I]f the Planning Director affirms the determination of noncompliance, he shall so advise the permittee in writing. The permittee shall have five days thereafter to correct the noncompliance; provided that the Planning Director may allow a longer period upon a finding of good cause, such as where circumstances beyond the permittee's control will prevent compliance within the five–day period.

[7] Rule 12–10(d) reads:

    (d)   If the permittee fails to correct the noncompliance within the required time period, the Planning Director shall refer the matter with his recommendations to the Planning Commission for further disposition, which may include, but is not limited to, either the revocation or the modification of the permit.

States Constitution[8] and Article I, Section 5 of the Hawaii State Constitution.[9] We have already held that the statute satisfies the constitutional requirements of the Hawaii State Constitution. *Medeiros v. Hawaii County Planning Comm'n*, 8 Haw. App. 183, 797 P.2d 59 (1990) (citing *Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 773 P.2d 250 (1989)). The rationale in *Medeiros* is applicable here, and we now hold that HRS § 205–5.1 satisfies the United States Constitution.

### III.

Appellants next raise procedural issues with respect to notice. Contrary to Appellants' claim, we find no violation of their constitutional due process rights.

### A.

Appellants argue that Rule 12–5(c) does not meet minimum due process requirements. They contend that the Rule's requirement that Respondent mail notice to property owners within three hundred feet of the project's boundaries and make a reasonable attempt to notify residents within one thousand feet is facially inadequate, because Respondent's operation "has the potential to affect property and human health over large areas of Puna."

Appellants do not challenge the means used to provide notice under the Rule. Neither do they complain that they did not receive

---

[8] The Fourteenth Amendment of the United States Constitution provides in pertinent part:

No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]

[9] Article I, Section 5 of the Hawaii State Constitution provides in pertinent part:

No person shall be deprived of life, liberty or property without due process of law[.]

notice. Rather, they claim that the 1,000 feet perimeter is not large enough to cover everyone who might suffer injury to property or health from a geothermal project. Appellants have no standing to raise the issue of Rule 12–5(c)'s invalidity, since they have not shown that they have been injured by its alleged inadequacy. *See State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973).

### B.

Appellants also argue that Respondent should have been required to give notice in accordance with Rule 12–5(c), *supra*, of the September 19, 1989 continued hearing. The argument is without merit.

The supreme court addressed the issue of notice of a continued hearing in *Chang v. Planning Comm'n*, 64 Haw. 431, 643 P.2d 55 (1982). There it was held that, except in cases where it may be necessary to "prevent hardship or unfair surprise, as where the subject matter changes for the later hearing," *id.* at 439, 643 P.2d at 61, notice of a rescheduled hearing was not required where the appellant was present at the first hearing, heard the announced rescheduling, and "suffered no prejudice to his participation rights." *Id.* That is precisely the situation here.

### IV.

Appellants argue that the permit is invalid because the Commission's procedure was unlawful. They contend that pursuant to HRS § 205–5.1(e) [10] and Rule 12–5–1(n), [11] the Commission was

---

[10] The applicable provision of HRS § 205–5.1(e) reads:

> Within ten days after the second public hearing, the county authority may receive additional written comment on the issues raised at the second public hearing from any party.

[11] The applicable provision of Rule 12–5–1(n) reads:

required to, but did not, keep the record open for ten days after the second hearing to receive further evidence. The statute and the Rule provide that the Commission "may" receive additional written comment submitted within ten days of the close of the record hearing. Appellants contend that the word "may" should be construed as mandatory. We disagree.

Where the words "shall" and "may" are used in close juxtaposition in a statute, each word carries its ordinary meaning. *In re Fasi*, 63 Haw. 624, 634 P.2d 98 (1981). In the instant case, both the statute and the Rule use the words "shall" and "may" throughout. Giving the word "may" its ordinary meaning in this instance, we conclude that the receipt of additional evidence after the close of the second hearing was discretionary with the Commission. The record does not disclose that the Commission abused that discretion.

## V.

We find no merit in Appellants' arguments that (A) the Commission's decision is based on an inadequate record and is therefore arbitrary and capricious; and (B) the Commission's finding that the permit meets the criteria for issuance under HRS § 205–5.1(e) is wrong.

## A.

Appellants argue that "many very significant concerns of the appellants and other parties were not adequately addressed or were not addressed at all[,]" and "[m]any of the witnesses, including

---

Within 10 days after the second public hearing, the Planning Commission may receive additional written comment on the unresolved mediation issues raised at the second public hearing by any party.

appellant Pele Defense Fund, testified that the record was inadequate."

The Commission's decision is presumptively valid and Appellants have the burden to convince this court otherwise. *In re Kaanapali Water Corp.*, 5 Haw. App. 71, 678 P.2d 584 (1984). Appellants have failed to carry their burden. First, the assertions of the participants or Appellants that the record is inadequate do not make it so. Second, they have not indicated where in the record any of the participants' concerns were not addressed. We will not comb through the record to find error. *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 713 P.2d 943 (1986).

## B.

Appellants argue that, since condition 51, discussed above, cannot be met, the Commission's finding that the permit complies with the HRS § 205–5.1(e) requirements for issuance is clearly erroneous. They assert that, absent condition 51, Respondent's activities will have "unreasonable health, environmental, and socio–economic impacts on residents and surrounding property that cannot be mitigated." We disagree.

Condition 51 is designed to meet the concern of the participants that, should they be required to remove themselves from their property, they would not be able to bear the expense. Condition 51 would provide assistance to them. Condition 51 does not appear to have been the *sine qua non* of the Commission's finding, and the record does not support Appellants' argument that the finding cannot be supported without it.

Affirmed.

*Thomas E. Luebben*, pro hac vice (*Anthony L. Ranken* with him on the briefs; Anthony L. Ranken, of counsel), for appellants.

*Frederick Giannini*, Deputy Corporation Counsel, County of Hawaii, for Hawaii County Planning Commission.

*Gerald A. Sumida* (*Stanley D. Suyat* and *Gilbert S. Coloma–Agaran* with him on the brief; Carlsmith, Wichman, Case, Mukai and Ichiki, of counsel) for Puna Geothermal Venture.