PELE DEFENSE FUND, a Hawai'i non–profit corporation; AURORA MARTINOVITCH, ROBERT PETRICCI, STEVE PHILIPS, SUSAN PHILIPS, GREGORY POMMERENK, and DEBORAH POMMERENK, Plaintiffs–Appellants, v. PUNA GEOTHERMAL VENTURE, a Hawai'i partnership, Defendant–Appellee

NO. 15011

(CIV. NO. 90–351)

MARCH 31, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE KAULUKUKUI, ASSIGNED BY REASON OF VACANCY

144

OPINION OF THE COURT BY HEEN, J.

On September 10, 1990, two days before this court entered the opinion in *Pele Defense Fund v. Puna Geothermal Venture*, 8

Haw. App. 203, 797 P.2d 69 (1990) (*Pele I*), Plaintiffs–Appellants Pele Defense Fund, a Hawai'i non–profit corporation, Aurora Martinovich, Robert Petricci, Steven Philips, Susan Philips, Gregory Pommerenk, and Deborah Pommerenk (collectively Plaintiffs) filed this action below (*Pele II*) seeking a declaratory judgment and injunctive relief. On November 5, 1990, the circuit court, in separate orders, denied Plaintiffs' motion for a preliminary injunction and granted Defendant–Appellee Puna Geothermal Venture's (Defendant) motion to dismiss with prejudice. Plaintiffs appeal only the order of dismissal.

## I.

*Pele II* stems, as did *Pele I*, from the Hawai'i County Planning Commission's (Commission) award to Defendant of Geothermal Resource Permit No. 2 (GRP–2) and centers on condition 51 of GRP–2.[1] The complaint alleges that (1) condition 51 can never be complied with and, consequently, GRP–2 is null and void (claim 1); (2) condition 51 was not complied with and, therefore, any construction activity under GRP–2 would be illegal (claim 2); and (3) Defendant's construction work would create excessive noise, and since Defendant had not obtained a permit for excessive noise as required by Hawai'i Revised Statutes (HRS) Chapter 342F (Supp. 1991), the construction work would be illegal (claim 3).[2] Plain-

---

[1] The complaint and the opening brief refer to the permit as Geothermal Resource Permit No. 1 (GRP–1). However, the record indicates that GRP–1 is the number of the permit application. The permit number is Geothermal Resource Permit No. 2 (GRP–2).

[2] The complete text of condition 51 is set forth in *Pele Defense Fund v. Puna Geothermal Venture*, 8 Haw. App. 203, 206–08, 797 P.2d 69, 71–72 (1990). In summary, condition 51 requires the State and Defendant to contribute monies to a Geothermal Asset Fund to be used for "geothermal impact mitigation efforts" and requires Hawai'i County to promulgate rules and regulations for administration of the fund.

tiffs asked the lower court (1) to declare (a) that condition 51 had not been and could not be satisfied, and (b) that Defendant's construction activity would create excessive noise, and (2) to enjoin any further activity under GRP–2 until all of condition 51's terms had been met and Defendant had obtained a permit regulating excessive noise from the Health Department.

Defendant's motion to dismiss was filed under Rule 12(b)(6), Hawai'i Rules of Civil Procedure (1980), and was accompanied by a number of documents. Since the documents were not excluded by the court, our review is governed by the principles regarding summary judgment. *Rosa v. CWJ Contractors, Ltd.*, 4 Haw. App. 210, 664 P.2d 745 (1983). We are obliged to determine from the record whether there is no genuine issue of material fact and Defendant was entitled to judgment on all claims as a matter of law. *See Kukui Nuts of Hawai'i, Inc. v. R. Baird & Co.*, 7 Haw. App. 598, 789 P.2d 501 (1990).

The answering brief accuses Plaintiffs of enmeshing Defendant and GRP–2 in ". . . protracted and repetitious litigation," causing Defendant "to incur substantial expense and delay resulting from two extended public hearings, a lengthy mediation process, a protracted appeal aggravated by dilatory briefing and repetitious motions[.]" The record certainly portrays a long–standing dispute between the residents of Puna and the proponents of geothermal development.

We take judicial notice of the dispute and the further fact that geothermal development is viewed by proponents throughout the State as essential to providing for the State's energy needs. The importance of the issue demands that our citizenry, the government agencies concerned, and the courts ensure that all the necessary prerequisites to geothermal development as established by the pertinent statutes be conscientiously observed. This action must be viewed in that light.

## II.

Defendant argues that claims 1 and 2 are barred by res judicata and that claim 3 is barred by collateral estoppel. Plaintiffs argue that their claims are not barred by res judicata. We agree with Defendant regarding claims 1 and 3. With respect to claim 2, we hold it is not barred by res judicata. We will discuss claims 1 and 3, first, followed by claim 2.

### Claim 1

Claim 1 is the same as that presented in *Pele I* that condition 51 could never be satisfied. As an attack on the validity of GRP–2, claim 1 is res judicata. *Hall v. State*, 7 Haw. App. 274, 756 P.2d 1048, *cert. denied*, 488 U.S. 803, 109 S. Ct. 33, 102 L. Ed. 2d 13 (1988).

### Claim 3

The record in *Pele I* indicates that the potential for noise generated by Defendant played a large role in the controversy over the issuance of GRP–2. The issue of whether Defendant was required to obtain a permit for excessive noise from the State Department of Health could have been raised in *Pele I*. Consequently, the issue is res judicata.[3] *Hall v. State*.

### Claim 2

Condition 51 requires (1) the State and Defendant to initially "contribute" funds to "[the Geothermal Asset Fund (GAF)] or other appropriate existing fund" to be used for "geothermal impact

---

[3] We do not decide the challenge raised by Defendant to Plaintiffs' standing to bring an action under Hawai'i Revised Statutes (HRS) Chapter 342F (Supp. 1991). Neither do we decide the question whether, in spite of the noise level guidelines and the noise monitoring and control requirements imposed in GRP–2, the provisions of HRS Chapter 342F are applicable in accordance with HRS § 205–5.1(c) (Supp. 1991).

mitigation efforts" within the Puna district,[4] and (2) the County of Hawai'i (County) to promulgate, with the participation of Puna residents, rules and regulations for the administration of GAF. Plaintiffs contend that those requirements must be met before building and construction permits may be issued.

The testimony below shows that Defendant had obtained permits for some of its building and construction activities on its geothermal drilling site and was carrying on such activities at the time of the hearing below.[5] The testimony also shows that no rules or regulations regarding the administration of GAF have been established.

Plaintiffs assert that the State's contribution to GAF is subject to reimbursement and does not meet condition 51's terms. For that reason, and because the rules and regulations have not been promulgated, Plaintiffs argue that condition 51 has not been satisfied, and any building and construction permits were illegally issued.

Claim 2 is different from the claim in *Pele I*, and was presaged by our statement there that:

> Whether or not condition 51's terms have been complied with becomes pertinent when Respondent applies for its first building or construction permit. Presumably, it will not be able to obtain any permit unless condition 51 has been met.

*Pele I*, 8 Haw. App. at 209, 797 P.2d at 72.

Indeed, claim 2 could not have been raised until the State made its contribution to GAF and Defendant applied for and obtained building and construction permits. Those events did not

---

[4] Condition 51 also requires Defendant to make eight additional annual contributions to Geothermal Asset Fund. Plaintiffs do not assert that Defendant has failed to make its initial contribution.

[5] The permits are not in the record, and the nature and extent of the construction activity is not clear.

take place until after the November 2, 1989 appeal in *Pele I*. The record indicates that the legislature did not authorize the State's contribution to GAF until the 1990 legislative session, Act 299, § 5(30), 1990 Haw. Sess. Laws 672, 710,[6] and the contribution was not deposited until some time after January 30, 1990. We do not know when Defendant applied for and obtained its building and construction permits. However, it does not appear that the permits were applied for before *Pele I*. Thus, claim 2 is not barred by res judicata. We now consider whether the circuit court correctly dismissed claim 2 on summary judgment grounds.

### III.

Examination of the record indicates there are genuine issues of material fact regarding the alleged noncompliance with condition 51. A November 28, 1989 letter from the State Department of Land and Natural Resources (DLNR) to the Hawai'i County Planning Director (Director) indicates that the State expected its contribution to be reimbursed. Minutes of a Commission meeting, that apparently took place on December 19, 1989, indicate that the Commission's position was that if reimbursement was expected, condition 51 "cannot be fulfilled." A January 2, 1990 letter from the Director to DLNR states that the Commission did not consider that "a payback mechanism" was included in condition 51. A

---

[6] The pertinent provisions of the enactment are as follows:

SECTION 5. Part III, Act 316, Session Laws of Hawai'i 1989 is amended:

\* \* \*

(30) By adding a new section to read as follows:

"SECTION 70A. Provided that the department of land and natural resources (LNR 906), may advance up to $250,000 to the community assistance fund that will be administered by the county of Hawai'i to assist in mitigating proven harmful effects resulting from geothermal development activities; provided further that the revenues from the sale of steam from the HGP–A well shall be utilized to reimburse the department of land and natural resources for the amount advanced."

January 30, 1990 letter from DLNR indicates that the State expects to "eventually be reimbursed[.]" The Director testified at the hearing in this case that the State's contribution had been received and condition 51 had been met. He also testified that when the State's contribution was made, the State said nothing about reimbursement.

The record does not indicate whether DLNR, when it finally made its contribution, had abandoned its expectation of reimbursement.[7] Neither does the record indicate whether the Commission is still of the opinion that a reimbursable contribution does not comply with condition 51. Those questions are material to the legal issue of whether condition 51 has been satisfied. The Director's determination that condition 51 had been met is not binding on the court. *Sohns v. Jensen*, 11 Wis. 2d 449, 105 N.W.2d 818 (1960).

Additionally, it is not clear from the language of condition 51 whether or not the Commission intended that the rules, regulations, and procedures required therein had to be promulgated before any construction permits could be issued.

Finally, the argument made by Defendant that Plaintiffs' claims cannot defeat Defendant's rights under GRP–2 because of the statement in condition 51 that

> [t]he rights granted to the permittee shall not be conditioned upon any contribution or further participation by the State in the fund nor with respect to the creation, management, and operation of the fund other than set forth above[,]

also requires a determination of fact as to what the Commission intended by that provision.

---

[7] Act 299 indicates that the legislature expects reimbursement. *See supra* note 6.

## IV.

Defendant argues that Plaintiffs are not entitled to judicial relief on this record, because they have failed to exhaust their administrative remedies.[8] We disagree.

The doctrine of exhaustion of remedies in the field of administrative law holds that where a remedy is available from an administrative agency, that remedy must be exhausted before the courts will act to afford relief.

> "Judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process."

*Kona Old Hawai'ian Trails Group v. Lyman*, 69 Haw. 81, 93, 734 P.2d 161, 169 (1987) (quoting B. SCHWARTZ, ADMINISTRATIVE LAW § 8.30, at 502 (2d ed. 1984)).

Where, however, no administrative procedures are provided for an aggrieved party to seek a remedy, the aggrieved party may apply directly to the court for relief. *Northern Boiler Co. v. David*, 105 N.E.2d 451 (Ohio App. 1951). The statute, ordinance or regulation under which the agency exercises its power must establish "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." *Rosenfield v. Malcolm*, 65 Cal. 2d 559, 566, 55 Cal. Rptr. 505, 509, 421 P.2d 697, 701 (1967). Where the administrative machinery is not provided, the power of the court is not ousted by a claim of failure to exhaust administrative remedies. *Matson Terminals v. California Employment Comm'n*, 24 Cal. 2d 695, 151 P.2d 202 (1944).

---

[8] In their reply brief, Plaintiffs argue that the issue of exhaustion of administrative remedies was not raised below. However, at the hearing the Hawai'i County Planning Director was cross-examined on the procedures to be followed in determining whether condition 51 had been satisfied, and defense counsel argued that the procedures had not been followed by Plaintiffs. Thus, the issue was adequately raised below.

Examination of the record in this case indicates that no administrative recourse was afforded to Plaintiffs.

First, as we have noted above, claim 2 is not a challenge to the validity of GRP–2 and does not seek to strike down condition 51. Rather, claim 2 merely questions whether condition 51's terms have been met and challenges the building and construction permits issued to Defendant. Consequently, the appeal provisions of HRS § 205–5.1(g) (Supp. 1991), which are applicable to an appeal from an agency action following a public hearing or hearings on a geothermal permit application, do not afford Plaintiffs an avenue of relief for claim 2.[9]

---

[9] HRS § 205–5.1(g) and (h) (Supp. 1991) reads as follows:
**Geothermal resource subzones.**

\* \* \*

(g) Any decision made by an appropriate county authority or the board pursuant to a public hearing or hearings under this section may be appealed directly on the record to the supreme court for final decision and shall not be subject to a contested case hearing. Sections 91–14(b) and (g) shall govern the appeal, notwithstanding the lack of a contested case hearing on the matter. The appropriate county authority or the board shall provide a court reporter to produce a transcript of the proceedings at all public hearings under this section for purposes of an appeal.

(h) For the purposes of an appeal from a decision from a public hearing, the record shall include:

(1) The application for the permit and all accompanying supporting documents, including but not limited to: reports, studies, affidavits, statements, and exhibits.

(2) Staff recommendations submitted to the members of the agency in consideration of the application.

(3) Oral and written public testimony received at the public hearings.

(4) Written transcripts of the proceedings at the public hearings.

(5) The written recommendation received by the agency from the mediator with any mediation agreement.

(6) A statement of relevant matters noticed by the agency members at the public hearings.

(7) The written decision of the agency issued in connection with the application and public hearings.

Second, Defendant's reliance on Rule 12–10 (Rule 12–10) of the Commission's Rules of Practice and Procedure (1988),[10] in support of its argument is misplaced. Under Rule 12–10 Plaintiffs

---

(8)   Other documents required by the board or county authority.

[10] Rule 12–10 of the County of Hawai'i Planning Commission Rules of Practice and Procedure (1988) reads as follows:

12–10 **Enforcement of Permit and Conditions**

(a)   If the Planning Director determines that there is noncompliance with the geothermal resource permit or its conditions, the Planning Director shall so inform in writing the permittee and, if applicable, other appropriate County, State or Federal agencies, setting forth the grounds of his determination. Upon receiving notice of the determination of noncompliance, the permittee shall have five days to provide a written response to the notice of determination of noncompliance.

(b)   Notwithstanding any written response submitted by the permittee, if the Planning Director affirms the determination of noncompliance, he shall so advise the permittee in writing. The permittee shall have five days thereafter to correct the noncompliance; provided that the Planning Director may allow a longer period upon a finding of good cause, such as where circumstances beyond the permittee's control will prevent compliance within the five–day period.

(c)   The permittee may request a hearing with the Planning Commission to amend the permit, should compliance be impossible or impractical to meet.

(d)   If the permittee fails to correct the noncompliance within the required time period, the Planning Director shall refer the matter with his recommendations to the Planning Commission for further disposition, which may include, but is not limited to, either the revocation or the modification of the permit.

(e)   Notwithstanding any other provision of this section, pending a hearing by the Planning Commission the Planning Director may immediately and temporarily suspend the permit and operations allowed thereunder. Notice of a temporary suspension shall be provided in writing or orally with subsequent written confirmation within three days to the permittee and shall set forth the reasons for the temporary suspension. The Planning Director may

are not provided either with a means of bringing to the Director a complaint of noncompliance with a condition of a geothermal permit or a route of appeal from the Director's decision on such a complaint to the Commission.[11]

Finally, the record contains nothing to indicate that § 5–6.3 of the Hawai'i County Charter (1980), which provides that the County Board of Appeals "shall hear and determine all appeals from the actions of the [Director] and [Commission][,]" affords Plaintiffs a remedy in this case.

## CONCLUSION

The record shows that there are genuine issues of material fact relating to claim 2; therefore, summary judgment was improvidently granted on that claim. Accordingly, we vacate the dismissal of claim 2 and remand for further proceedings. In all other respects the judgment is affirmed.

---

reactivate the permit upon a subsequent finding of the permittee's compliance with the permit condition. Subject to the Planning Commission rules, the permittee may at any time request a hearing before the Planning Commission for its review and action with regard to the permit's temporary suspension or any subsequent refusal of the Planning Director to reactivate the permit. Referrals by the Planning Director to the Planning Commission and reviews by the Planning Commission of the Planning Director's action shall be heard at the Commission's next meeting when the matter can be placed on the Commission's agenda.

[11] We note, also, that Rule 12–12 (Rule 12–12) of the Hawai'i County Planning Commission's Rules of Practice and Procedure (1988) provides that an appeal from a Commission decision after a public hearing may be made directly to the supreme court. Rule 12–12 is merely repetitious of HRS § 205–5.1(g) and (h).

*Anthony L. Ranken* on the briefs for plaintiffs–appellants.

*Gerald A. Sumida, Margery S. Bronster, Paul H. Achitoff,* and *Gilbert S. Coloma–Agaran* (Carlsmith Ball Wichman Murray Case Mukai & Ichiki, of counsel) on the brief for defendant–appellee.