230 So.2d 636 (1970)
Leonard G. LEWIS, Plaintiff-Appellant,
v.
The FIDELITY & CASUALTY COMPANY OF NEW YORK et al., Defendants-Appellants.
No. 11333.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1970.
*637 Hendrick, Fant & Bain, by Troy E. Bain, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts, Shreveport, by Wilton H. Williams, Jr., for defendants-appellants.
Before BOLIN, DIXON and WILLIAMS, JJ.
BOLIN, Judge.
Leonard G. Lewis sued for damages allegedly resulting from injuries sustained on April 21, 1967, when his automobile was struck from the rear by a panel truck operated by Otis R. Sumerall, owned by Interstate Electric Company and insured by The Fidelity & Casualty Company of New York. Plaintiff voluntarily dismissed his demands against Sumerall. The jury returned a verdict in favor of Lewis and against defendants, Interstate Electric and Fidelity & Casualty, in solido for $75,000, subject to a credit of $5,344.95 which defendants had paid to plaintiff as workmen's compensation. Both plaintiff and defendants have appealed.
Plaintiff's appeal asks only that the judgment be affirmed. Defendants have not questioned the liability portion of the judgment and as a consequence we shall devote our review principally to the issue of whether or not the award was grossly excessive.
At the time of trial plaintiff was forty years of age. In 1961 his right leg was amputated approximately eight inches below the hip due to cancer of the bone. Soon thereafter he was fitted with an artificial limb weighing approximately 18 pounds. He suffered no recurrence of cancer, and at the time of trial he was able to ambulate without the aid of crutches. Lewis was employed as a meat salesman for a Shreveport packing company which necessitated his calling on retail grocers within a radius of approximately 100 miles of Shreveport. He was able to drive an automobile, manipulate into and out of it and efficiently perform without discomfort all other duties incidental to his employment.
On the day of the accident, while en route to his home in Shreveport to leave some personal items before proceeding to a sales meeting at his employer's establishment, plaintiff's car was struck from the rear by the panel truck. Lewis experienced no immediate pain and, after a routine investigation of the wreck, proceeded to the sales meeting. That night he developed a headache and pains in his back and telephoned Dr. Fair, his family physician, who caused him to be admitted to a local hospital. There he was examined by Dr. Harold Bicknell, an orthopedic specialist, whose original diagnosis was muscle spasm of the cervical and lumbar spine, a fracture of the first cervical vertebra and a musculo-ligamentous sprain of the lumbar spine. Plaintiff was treated with muscle relaxants and sedatives and placed in cervical traction.
Plaintiff remained in the hospital until May 13, 1967, during which time he experienced considerable pain in his back and in the head and neck area. Upon discharge from the hospital he was fitted with a cervical brace. On June 8, 1967, Dr. Bicknell advised Lewis to try using his artificial leg again which he did with great difficulty. However, he continued to use it intermittently for several weeks. On July 20, 1967, plaintiff was still complaining *638 of headaches and pain in his back and his inability to use his artificial leg with any degree of success. Upon reexamining plaintiff Dr. Bicknell concluded the fracture of the cervical vertebra had healed and he supplanted the cervical brace with a cervical collar. Dr. Bicknell was of the opinion plaintiff would be able to do limited work within a short time, and on July 27, 1967, he advised plaintiff to return to his employment on a trial basis. However, plaintiff was unable to return to work and informed Dr. Bicknell on August 4, 1967, he was continuing to experience headaches and considerable pain in the lower region of his back. Accordingly, on this date, Dr. Bicknell prescribed a lumbosacral support.
On August 15, 1967, plaintiff consulted Dr. Bicknell concerning pain in his left knee, and a knee support was prescribed. Plaintiff again complained of severe headaches, and on September 22, 1967, Dr. Bicknell referred him to Dr. Phillip Bonn, a neurosurgeon. Dr. Bonn's treatment consisted of injections in both the left and right posterior of plaintiff's head, which caused some numbness but relieved the pains for approximately six weeks. Dr. Bonn repeated this treatment on plaintiff's next visit to him. Shortly thereafter Dr. Bonn died in a tragic accident.
On October 19, 1967, Dr. Bicknell examined plaintiff and could find no objective reason why he could not return to his former employment. In April, 1968, plaintiff again complained to Dr. Bicknell that his headaches had returned and he was referred to Dr. Heinz Faludi, a neurosurgeon, who concluded plaintiff had a condition which he termed "a second cervical spinal ganglion syndrome". He defined this as an injury to the nerves between the first and second cervical vertebra and concluded the condition probably resulted from the automobile accident. On June 23, 1968, after a negative myelogram, Dr. Faludi performed an occipital neurectomy on plaintiff, who was released from the hospital about eight days later.
Following the nerve operation plaintiff returned to his home and, although he obtained some relief, continued suffering from headaches. In November, 1968, Dr. Faludi reexamined plaintiff and found muscle spasms in his neck in the area of the surgery for which medication was prescribed. Dr. Faludi continued treating plaintiff until the date of trial.
In addition to Dr. Bicknell and Dr. Faludi, at the request of defendants plaintiff was examined by Dr. Bennett Young, an orthopedist, and Dr. Fred C. Boykin, a neurosurgeon. Dr. Boykin's examination on April 30, 1969, was performed for the purpose of evaluating plaintiff's physical condition. This examination revealed plaintiff had headaches, with anesthesia in the greater occipital nerve area, and low back pain. Dr. Boykin could find no organic cause for plaintiff's complaints, other than some subsiding infection in the stump of the amputated leg. He was of the opinion plaintiff was physically able to return to his former employment, although he could not say plaintiff's headaches might not be disabling.
Dr. Young examined plaintiff on two occasions and could find no objective reason why plaintiff should continue experiencing headaches and low back pain and recommended plaintiff return to work.
From our study of the record we are convinced plaintiff was involved in a minor automobile accident. Undoubtedly plaintiff did not anticipate his medical treatment would become so lengthy and involved but, unfortunately, he did not respond to medical treatment as well as could reasonably have been expected. Dr. Bicknell continued to treat Lewis to the time of trial and was never able to release him with any assurance that he was well. His headaches persisted and were not relieved by the surgical removal of his occipital nerves. He was in traction for some time and wore braces and supports in an effort to alleviate the pain in his head and neck and in his low back.
*639 Since plaintiff-appellant concedes the correctness of the judgment, this court need only consider the issues raised in defendants' specification of errors, particularly: refusal of the trial court to give certain special instructions to the jury as requested by defendants-appellants; the propriety of the trial court's refusal to admit evidence of amounts received by plaintiff contingent upon his not working; and whether the jury award was excessive.
We shall consider the issues in the order above stated. The trial judge refused to give to the jury defendants' following special request: "The failure of a party to produce a physician who has examined him without accounting for his absence raises a presumption that his testimony would have been unfavorable to the party." The record shows plaintiff had been examined by several other doctors who were not called as witnesses, but we are convinced the presumption that their testimony would have been unfavorable does not apply in the instant case. All the medical specialists who actually treated plaintiff were called and testified at length. We find the lower court committed no prejudicial error in refusing to grant the special request.
Also complained of was the lower court's refusal to instruct members of the jury that they should not be influenced by passion, prejudice, sympathy or any other motive except a fair and impartial consideration of all the evidence. Attorneys for defendants have not suggested we remand the case to the lower court in order that this or other special instructions be given if we find them meritorious. We find nothing improper about this instruction and will take it into consideration in rendering our opinion.
Defendants specify the trial court erroneously excluded evidence offered by defendants tending to prove plaintiff was receiving $292 per month. An offer of proof was made on behalf of defendants showing they intended to establish that in November, 1967, shortly after Dr. Bicknell had recommended to Mr. Lewis that he return to work, Lewis commenced receiving a monthly income which would be continuous only so long as he was not working. Defendants contend such evidence was not being offered for the purpose of attempting to have the amount of that income deducted from any sum which Lewis would be entitled to receive as loss of earnings, but was being offered for the purpose of showing a motive on his part for not returning to work. While such evidence might have been confusing to the jury,`we find it admissible and will take it into consideration in determining the ultimate issue of quantum.
Last for consideration is whether the jury award was excessive. The basic tort law of Louisiana appears in Louisiana Civil Code Article 2315 which provides in part: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." In reviewing a trial court's award of damages the appellate courts are bound by the following portion of Louisiana Civil Code Article 1934(3): "In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, * * *".
Where quantum is an issue on appeal our courts have interpreted the cited articles as requiring the appellate court to review all the facts and circumstances on which the lower court based its award, but this review is confined to determining whether there has been an abuse of the "much discretion". If the appellate court finds an abuse of discretion the amount of the award should be increased or decreased as the particular case warrants. See Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964).
In line with the above principles of law, we have examined the award of $75,000 *640 to Mr. Lewis. The record establishes plaintiff's hospital and medical expenses amounted to $2822.26 and he had incidental expenses of $167.02. Thus, his special damages, exclusive of loss of earnings, was $2989.28. Mr. Lewis testified he was earning approximately $6100 per year at the time of the accident and, up to the date of trial, had been unable to return to work. Basing our award on these figures, his total special damages, including loss of earnings, totalled approximately $15,000. Therefore, it must be concluded the jury awarded him an additional $60,000 for his personal injuries, future pain and suffering and loss of wages. We find this award so excessive as to constitute an abuse of the "much discretion" vested in the jury and the trial court. We are convinced Lewis is sincere in all his complaints, and, in fact, there is no evidence he attempted to magnify his suffering. Being an amputee at the time of the accident complicated plaintiff's problems and rendered him less able to recover by the normal process of healing.
We conclude plaintiff has established the following conditions were caused from the automobile accident. He is suffering from headaches which, while not disabling, may continue intermittently for an indeterminable length of time. The sprain in his lower back continues to cause him pain due to the necessity of wearing the artificial limb which results in an unnatural gait and causes undue strain on his back. This pain is of such a nature as to render him unable to perform any type of work requiring him to stand or drive a car for any appreciable length of time. Although we are convinced plaintiff is not able to return to his former employment we conclude he is able to do light work, and his earning capacity has been only slightly diminished. Therefore, an award should not be based upon a finding that he will have a total loss of earning capacity in the future. This diminution in future earning capacity, coupled with his moderate future pain and suffering from headaches and pain in the lower back area from the use of his artificial leg, does not justify an award of $60,000n We think the sum of $35,000 for his future disability and pain and suffering would be adequate. Adding the $35,000 to the special damages previously calculated at $15,000 results in a total award of $50,000.
For the reasons assigned the judgment appealed from is amended so as to reduce the award from $75,000 to $50,000 and, as thus amended, is affirmed at defendants' cost.