391 So.2d 954 (1980)
Wayne L. LAUMANN
v.
SEARS ROEBUCK AND COMPANY, Allstate Insurance Company and Harris Black.
No. 11458.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1980.
*955 Edward J. Norton, Jr., New Orleans, for plaintiff-appellant.
Murphy & Simon, James M. Colomb, III, New Orleans, for defendants-appellees.
Before REDMANN, GULOTTA and GARRISON, JJ.
GULOTTA, Judge.
In this personal injury suit, plaintiff appeals complaining that a $2,161.00 jury award (comprising $141.00 in medical expenses, $1,320.00 in lost wages, and $700.00 for pain and suffering) is inadequate. The medical expenses and lost wages represent the stipulated amount of workmen's compensation and medical expenses paid to plaintiff by State Farm Fire and Casualty Company, the intervenor.
Wayne Laumann was injured on October 16, 1975 when the Cool-Air Refrigeration truck in which he was a passenger was rear ended by a Sears service truck. Damage to the vehicles was minor, and neither the driver of the Cool-Air truck nor the driver or passenger in the Sears truck complained of injuries. Plaintiff did not complain of injuries at the scene, but began experiencing headaches and neck pain the following day. Xrays taken at a hospital emergency room were negative and no objective symptoms were noted.

GENERAL DAMAGE AWARD
Examination on October 24, 1975 by Dr. Lynn Hamilton, an orthopedic surgeon, revealed neck stiffness and restricted motion of plaintiff's cervical spine limited to 60. A sprain of the ligaments was diagnosed and plaintiff was advised to return in one week.
It was not until December 23, 1975 that plaintiff made a return visit to Dr. Hamilton. At that time Laumann reported that on sudden motion he continued to experience neck pain. Examination revealed a full range of motion, but with complaint of pain upon light lateral rotation of the neck. The doctor recommended that plaintiff continue limited activity and return in three weeks.
When Laumann returned on January 14, 1976, he stated he was having "charley horses" in his neck at night and difficulty falling asleep. On this visit the doctor found full range of motion of the cervical spine with no tenderness. Although plaintiff said he had pain, no objective findings *956 of pain were made. Laumann was given an appointment to return in one month. He was again seen on February 11, 1976 and reported he was still having pain in the neck, with a severe episode five days before the visit. The doctor noted in his report that plaintiff said he was doing heavy work at home and taking care of horses. Examination of the plaintiff revealed no tenderness or objective symptoms. The doctor indicated in his report that plaintiff may resume light work. Dr. Hamilton discharged Laumann on March 10, 1976, but he made a return visit on September 14, 1976. Although complaints of neck pain were made, again no objective symptoms were found. The doctor found a full range of motion and no tenderness.
Dr. Hamilton stated he felt plaintiff could have gone back to work in December had he asked about it. Although he made no objective findings on the February visit, the doctor advised Laumann to do only light work because of his complaints of pain.
Contrary to plaintiff's testimony that the doctor had prescribed Valium for him, which he did not take, Dr. Hamilton stated that he had never prescribed any medication. Further, in contrast to plaintiff's testimony, the doctor also denied he had ever prescribed physical therapy for plaintiff or told him to do physical therapy on his own at home.
In light of this medical evidence relating to plaintiff's injury, we cannot say the $700.00 award for pain and suffering is inadequate.

LOST WAGES
In connection with the claim for entitlement to additional lost wages, plaintiff complains that he lost his job as a result of the accident and was unable to find work until June 1976, a period of eight months. At the time of the accident Laumann was working as an installer for Cool-Air, Inc. for $2.25 an hour. His brother Frank, who was vice president of the company, fired him approximately one week after the accident. Frank Laumann did not appear at trial to testify, although he had been subpoenaed. His deposition was not admitted into evidence but is included in the record as a proffer.
Although the deposition contains much inadmissible testimony, we find it necessary to consider it in order to determine whether plaintiff's loss of his job was accident related. Frank Laumann stated that Wayne was very undependable and was frequently absent from work. Frank did not believe Wayne was truly injured. Wayne never said anything to Frank about being injured after the accident; instead, Wayne contacted the insurance company despite his employer's orders that any injuries were to be reported either to Frank or to his secretary. Frank did not observe any behavior on Wayne's part that would indicate he was hurt, although during a post accident one or two week period Wayne wore a neck brace that a friend had loaned him.
Wayne was terminated, according to Frank, because Wayne filed suit on a minor injury and because of his work record. He said Wayne "just didn't want to work." Further, Frank recalled, when he confronted Wayne after suit was filed, Wayne said that he was "going to get some money out of this." (However, since three years had elapsed, Frank admitted he was not sure Wayne had said that.) Finally, Frank said he had tolerated Wayne as an employee previously because Wayne was his brother and "if it would have been any person ... he wouldn't have stayed here nowhere near as long." Wayne testified that Frank fired him because he did not believe Wayne was hurt.
Plaintiff admitted he had worked driving a truck for a meat company in December or January following his accident. He also had worked for a refrigeration supply company beginning in March, 1976 but was terminated from that job. He testified further that he had worked for an oil company for three days in June, but quit because "the money was no good" and he "just didn't like the job." Plaintiff also admitted to having held several other jobs, but all of them apparently were after June, 1976 *957 when he admittedly had recovered from the accident.
Considering plaintiff's testimony, the admissible portions of Frank Laumann's deposition, and plaintiff's post-accident job history, we conclude plaintiff was not terminated from his employment because of injury sustained in the accident. Accordingly, we find no error in the jury's failure to award the additional special damages as claimed by plaintiff.
Laumann had received workmen's compensation benefits for temporary total disability for twenty-two weeks at the rate of $60.00 per week, for a total of $1,320.00, calculated on a salary of $90.00 per week. He contends the jury erred in failing to award additionally, the difference between the compensation benefits and the amount of his regularly earned wages, or $30.00 per week ($660.00 additional) and in failing to award lost wages for ten weeks between the time he was discharged by his doctor (March 1976) and the time he returned to work (June 1976) ($900.00 additional) for a total of $1,560.00 additional lost wages. He maintains the trial judge's instructions and comments and the statements of opposing counsel during trial, unnecessarily confused and prejudiced the jury. We reject this contention.
Plaintiff testified his weekly net pay amounted to $67.00. His weekly gross amounted to $90.00. The award of twenty-two weeks in compensation paid to plaintiff and reimbursed to the insurer, does not establish the jury concluded that plaintiff was unable to work for that entire time. Indeed, plaintiff admitted that he had worked at several jobs during the time he claims to have been disabled.
The payment of compensation is not to be regarded as establishing a measure of damages for the injury, and the intervenor is entitled to recover from the tort feasor any amount he had paid as compensation. LSA-R.S. 23:1101. The payment of twenty-two weeks of compensation does not establish that plaintiff was actually unable to work for that entire time, and the jury was not required to conclude he was disabled as long as he received compensation. In fact, as described above, plaintiff himself admitted that he had worked at several jobs during the time he claims to have been disabled. Based on this testimony, it was reasonable and not manifestly erroneous for the jury to conclude, as they obviously did, that plaintiff could have returned to work long before he actually did. Accordingly, we find no merit to plaintiff's contention the trial judge's instructions regarding reimbursement to the compensation intervenor prejudiced and confused the jury.
Plaintiff testified his net weekly earnings depended on the amount of hours he worked, but that he usually netted about $67.00, or $7.00 per week more than he received in compensation benefits. Under the circumstances we do not consider the defense attorney's comments to the jury, to the effect that plaintiff made as much by receiving compensation benefits as he could by working, to be reversably prejudicial. See Lewis v. Fidelity & Casualty Company of New York, 230 So.2d 636 (La.App.2nd Cir. 1980). Even assuming this and other statements cited by plaintiff's counsel were improper and prejudicial, he failed to object properly or to request the court to instruct the jury to ignore such statements. Instead, plaintiff's counsel merely commented, "We're getting a lot in the record that is prejudicial." The objection has been waived. See: Wilson v. Virgademo, 258 So.2d 572 (La.App. 4th Cir. 1972); Johnson v. H. W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir. 1970).
Having concluded that the jury did not err in the amount of the general damage award or in the failure to award additional lost wages, we affirm the judgment of the trial court.
AFFIRMED.