897 P.2d 941

**Russell SATO and Shelley I. Sato, Plaintiffs–Appellants,**

v.

**Stephanie TAWATA, John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Roe "Non–Profit" Corporations 1–10, and Roe Governmental Entities 1–10, Defendants–Appellees.**

No. 16388.

Supreme Court of Hawai'i.

May 19, 1995.

Raymond J. Tam, Henry N. Kitamura and Peter B. Carlisle of Shim, Tam, Kirimitsu & Chang, on the briefs, Honolulu, for plaintiffs-appellants.

Melvyn M. Miyagi and V. Nicole Bynum of Reid, Richards & Miyagi, on the briefs, Honolulu, for defendant-appellee Stephanie Tawata.

Before MOON, C.J., KLEIN, LEVINSON and RAMIL, JJ. and Circuit Judge SHIMABUKURO, in place of NAKAYAMA, J., recused.

MOON, Chief Justice.

Plaintiffs-appellants Russell Sato (Sato) and Shelley I. Sato [hereinafter collectively, appellants] appeal from the judgment entered pursuant to special verdict following a jury trial. Briefly, the facts indicate that Sato was injured in an automobile accident when a car, driven by defendant-appellee Stephanie Tawata, collided into a Love's Bakery truck driven by Sato. At trial, Tawata was allowed to introduce, over appellants' objection, evidence of workers' compensation benefits Sato had received. On appeal, appellants contend that, because Hawai'i Revised Statutes (HRS) § 386-8 (1985) unambiguously prohibits the introduction of workers' compensation benefits in any action brought to recover damages, the court abused its discretion in allowing its admission.

For the reasons discussed below, we hold that, under the circumstances of this case, the trial court did not abuse its discretion in admitting the evidence regarding Sato's receipt of workers' compensation benefits. Accordingly, we affirm the judgment in favor of

appellants in the amount of $306,474.11 and the order awarding costs to Tawata.[1]

## I. BACKGROUND

Sato was the driver of a Love's Bakery truck that was broadsided by a car driven by Tawata on February 5, 1988. At the time of the accident, Sato was employed by Love's Bakery as a pastry route salesman. Sato claimed he could not return to work because of the disability he suffered as a result of the accident. He maintained that he had sustained injuries to his back and suffered from panic disorder with mild agoraphobia, posttraumatic stress disorder, depression, and chronic pain syndrome. In their action for personal injury, Sato sought medical and rehabilitative expenses, past and future lost wages, and general damages for pain and suffering, and Shelley Sato claimed for loss of consortium.

Prior to trial, appellants filed a motion in limine to prohibit the introduction of the workers' compensation benefits Sato had received. Tawata opposed the motion and argued that Sato's workers' compensation benefits were admissible to show that Sato had no incentive to return to work because the benefits he was receiving approximated his pre-accident salary. The trial court granted the motion, subject to reconsideration upon the presentation of other evidence during trial.

At trial, appellants called as an expert witness Gregory Basting, M.D., a physician specializing in physical medicine and rehabilitation, who had treated Sato for his chronic pain syndrome. Dr. Basting testified, *inter alia*, that, although Sato complained of pain which prevented him from returning to work, there was no physiological basis for Sato's pain. To this extent, Dr. Basting confirmed the earlier testimony of Albert Chun–Hoon, M.D., an orthopedic surgeon, who had testified that there was no physiological basis, such as soft tissue abnormality or muscle tightness, for explaining Sato's pain. Dr. Chun–Hoon also testified that Sato was phys-ically capable of returning to work as a truck driver.

After Tawata completed her cross examination of Dr. Basting, she requested that the court reconsider its ruling with respect to Sato's receipt of workers' compensation benefits. During the court's reconsideration of Sato's motion in limine, which was conducted in the absence of the jury, Dr. Basting testified that Sato's receipt of workers' compensation benefits, which approximated his pre-accident salary, may have been a factor in causing Sato's pain syndrome and in his not returning to work. Following arguments from both sides, the court ruled that the evidence of Sato's workers' compensation benefits was a relevant subject of inquiry and, therefore, allowed Tawata to introduce evidence of Sato's receipt of workers' compensation benefits, but not as to the amount of such benefits.

Thereafter, in the presence of the jury, Dr. Basting testified that he agreed with Joseph Rogers, Ph.D., a clinical psychologist who was also treating Sato, that Sato's receipt of workers' compensation benefits, which approximated his pre-accident salary, was a "disincentive" to his returning to work. During Dr. Rogers' testimony, he explained his use of the term "disincentive" as "an explanation as to why people would not show an improvement in their pain, per se." Dr. Rogers opined that Sato was capable of returning to part-time sedentary work as early as August 1990. Moreover, testimony similar to that of Drs. Basting and Chun–Hoon was elicited from Rowlin Lichter, M.D., an orthopedic surgeon, who testified that there was no organic or physiological basis for Sato's pain or other symptoms and that Sato was orthopedically and physically capable of returning to work as a driver for Love's Bakery.

Other evidence indicated that Sato: (1) has an IQ of 122; (2) was able to drive his wife to work; and (3) volunteered at the Moʻiliʻili Community Center in the elder home-care department, where his duties included cook-

---

1. Pursuant to Hawaiʻi Rules of Civil Procedure (HRCP) Rule 68 (1990), Tawata was awarded costs in the amount of $16,602.16 based on ap-pellants' rejection of her pretrial offer of judgment in the amount of $350,000.00.

ing, shopping for groceries, and taking his elderly "clients" on walks for exercise.

The jury, by special verdict, awarded Sato: (1) $65,175.11 in medical expenses; (2) $100,-000.00 in past lost wages; (3) $11,300.00 in vocational rehabilitation expenses; (4) $55,-000.00 in lost future earnings;[2] and (5) $40,-000.00 in general damages, for a total award of $271,474.11. Shelley was awarded $35,-000.00 in general damages for her loss of consortium claim. As noted previously, Tawata was awarded costs in the amount of $16,602.16 pursuant to HRCP Rule 68, based upon appellants' rejection of her pretrial offer of judgment in the amount of $350,000.00. This timely appeal followed.

## II. *DISCUSSION*

The dispositive issue on appeal is whether HRS § 386–8 prohibits the introduction of workers' compensation benefits in third party liability actions. HRS § 386–8 provides in pertinent part:

> [w]hen a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.
>
> . . . .
>
> *The amount of compensation paid by the employer or the amount of compensation to which the injured employee is entitled shall not be admissible in evidence in any action brought to recover damages.*

(Emphasis added.)

Appellants contend that the trial court erred in allowing workers' compensation benefits received by Sato to be introduced at trial to show that such compensation, which approximated Sato's annual salary of $30,-000.00, was a disincentive for him to return to work. Appellants also contend that the language of the statute not only prohibits the introduction of the actual amount of compensation but "indicates an intent to broadly restrict the introduction of [the fact that] . . . compensation benefits [were] received by the injured employee[.]" Tawata, on the other hand, argues that the statute was not violated because (1) the actual amount of workers' compensation benefits received by Sato, (2) the period of time in which those benefits were received, and (3) the amount of Sato's medical expenses covered by workers' compensation were never specifically mentioned.

■ The interpretation of a statute is a question of law reviewable *de novo. Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). In so doing,

> [o]ur primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute[,] . . . for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review. Were this not the case, a court may be unable to adequately discern the underlying policy which the legislature seeks to promulgate and, thus, would be unable to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute.

*Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 68–69, 868 P.2d 1193, 1215–16

---

2. We note that in appellants' opening statement to the jury, Sato informed the jury that he would be seeking, *inter alia,* damages of: (1) $75,000.00 in medical expenses; $112,000.00 in past lost wages; (3) $11,000.00 in vocational rehabilitation expenses; and (4) $480,000.00 in lost future earnings.

(Klein, J., dissenting) (internal quotation marks and citations omitted), *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994). Unfortunately, the legislative history of HRS § 386–8 provides little guidance as to the statute's underlying policy. However, we agree with the South Carolina Supreme Court's interpretation of a workers' compensation statutory provision virtually identical to the provision at issue in this case[3] wherein the court held that "the primary purpose and intent [of the statute] was to prevent a third party ... from injecting Work[ers'] Compensation into a case, and the amount of compensation involved, *for the sole purpose of attempting to reduce the amount of any recovery." Powers v. Temple,* 250 S.C. 149, 157, 156 S.E.2d 759, 763 (1967) (emphasis added). We believe that such policy is premised on the general rule, usually referred to as the "collateral source rule," that "a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor[.]" 69 A.L.R. 4th § 2(a), at 139 (1989) (footnote omitted).

■ When faced with the issue whether to allow evidence of workers' compensation benefits to be presented to a jury, "the evidence should be admitted before the trial judge only, without disclosure to the jury, unless controverted or *unless some other basis for its admission develops in the trial, such as its pertinency to credibility of witnesses, or otherwise[.] Powers,* 250 S.C. at 156–57, 156 S.E.2d at 762 (quoting *Blue Ridge Rural Electric Cooperative v. Byrd,* 264 F.2d 689, 694 (4th Cir.1958)) (emphasis added) (internal citations omitted).

■ We therefore hold that the primary purpose of HRS § 386–8 is to prohibit the admission of evidence of workers' compensation benefits, if such evidence were offered for the sole purpose of reducing the amount of the plaintiff's recovery. However, where

evidence of workers' compensation benefits is relevant, that is, where some other basis for its admission exists, such as the credibility of witnesses, the trial court must exercise its discretion under Hawai'i Rules of Evidence (HRE) Rule 403 (1985) [4] to determine whether to admit such evidence.

To the extent that the arguments raised by appellants and Tawata are premised upon whether references to Sato's receipt of benefits as approximating his pre-accident salary constituted an "amount," under our holding today, the application of HRS § 386–8 does not rest upon such a narrow distinction. The question is whether there exists some relevant purpose for allowing the introduction of workers' compensation and whether the trial court abused its discretion by admitting such evidence.

■ Obviously, the fact that a plaintiff has received workers' compensation benefits, even without reference to the specific amount, standing alone, is inadmissible where the subject of workers' compensation benefits has not been raised as an issue in the case. Clearly, the sole purpose for admitting evidence of a plaintiff's receipt of workers' compensation benefits under such circumstances would be to impermissibly advise the jury that the plaintiff has already been compensated for his or her medical bills or lost wages. Such evidence might, in turn, cause the jury to reduce the plaintiff's claims for medical expenses and loss of income. In the present case, however, the record clearly indicates that the evidence of Sato's receipt of workers' compensation benefits was not admitted for the sole purpose of reducing the amount of his recovery, but to challenge his credibility as to his motive for not returning to work. Sato claimed that he could not return to work because of the disability he suffered as a result of the accident. As previously noted, the medical evidence indicated that, although Sato complained of pain

---

**3.** The South Carolina statute provides that "[t]he amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages." S.C.Ann. § 72–127.

**4.** HRE Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

which prevented him from returning to work, there was neither a physiological nor organic basis that would account for his pain. Also, Sato's treating clinical psychologist, Dr. Rogers, testified that Sato's receipt of workers' compensation benefits, which approximated his pre-accident salary, was a "disincentive" to his returning to work. Based on all of the evidence presented, it cannot be said that the admission of evidence relating to Sato's workers' compensation benefits was for the sole purpose of attempting to reduce any recovery. We therefore turn to the question whether the trial court abused its discretion in admitting the evidence under HRE Rule 403.

In *Kealoha v. County of Hawai'i*, 74 Haw. 308, 844 P.2d 670, *reconsideration denied*, 74 Haw. 650, 847 P.2d 263 (1993), this court reasoned that "the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect[.]' " *Id.* at 315, 844 P.2d at 674 (quoting *Kaeo v. Davis*, 68 Haw. 447, 454–55, 719 P.2d 387, 392 (1986)). Because the decision to admit evidence under HRE 403 requires a "judgment call" on the part of the trial court, its decision is reviewed under the traditional abuse of discretion standard and may not be reversed on appeal unless the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. *Kealoha*, 74 Haw. at 318–20, 844 P.2d at 675–76 (citations omitted).

Sato essentially argues that, because HRS § 386–8 unambiguously prohibits the introduction of evidence of workers' compensation benefits, such evidence should not be admitted at trial to show a plaintiff's lack of motivation to return to work because its probative value is far outweighed by the potential prejudice to the plaintiff. Indeed, the reason often advanced in support of the general rule that a third party be precluded from injecting workers' compensation into a case is to avoid the risk that such evidence will create a substantial danger of undue prejudice through the jury's use of the evidence as a set-off against a claim for lost earnings. *See* Michael R. Flaherty, Annotation, *Prejudicial Effect of Bringing to Jury's Attention Fact that Plaintiff in Personal Injury or Death Action is Entitled to Workers' Compensation Benefits*, 69 A.L.R. 4th 131 (1989). However, cases from other jurisdictions, including those mentioned in the above annotation, demonstrate numerous instances where the injection of workers' compensation evidence was not *per se* grounds for reversal. Instead, the nature of the issue raised and the presence or absence of curative or limiting instructions regarding the evidence of workers' compensation determined the propriety of admitting such evidence.

In *DeMedeiros v. Koehring Co.*, 709 F.2d 734 (1st Cir.1983), the defendants introduced evidence that the plaintiff was receiving $185 per week in workers' compensation benefits in an attempt to show that the plaintiff had other reasons for declining a job that would have paid $183 per week. The plaintiff testified that he had declined the job because he could not do some of the lifting and carrying that would be required due to his disability. In allowing the evidence, over the plaintiff's strenuous objections, the trial court stated that it believed such evidence would be relevant to the plaintiff's motivation in declining employment and would be admitted for that limited purpose.

In holding that there was no abuse of discretion on the part of the trial court in admitting the evidence, the court of appeals stated:

> Here, if the jury had not known of the work[ers'] compensation payments, it would have had no explanation of [the plaintiff's] refusal to return to work *except* his disability. The evidence was thus of more than borderline probativeness, and we see no abuse by the lower court in admitting it.

*Id.* at 741 (emphasis added); *see also Laumann v. Sears, Roebuck & Co.*, 391 So.2d 954 (La.App.1980) (where medical testimony indicated that no objective basis for plaintiff's neck pain existed, defense attorney's comment to jury that plaintiff made as much by receiving workers' compensation benefits as

he could by working not held as reversably prejudicial); *Lewis v. Fidelity & Cas. Co. of New York,* 230 So.2d 636 (La.App. 2d Cir. 1970), (evidence of plaintiff receiving a monthly income that would be continuous only so long as he was not working ruled admissible in case where three doctors testified that they could find no objective reason why plaintiff could not return to his former employment).

Even in *Clark v. Piccillo,* 75 N.J.Super. 123, 182 A.2d 381 (1962), a case relied upon by the appellants, the Superior Court of New Jersey, Appellate Division, recognized that there are occasions when reference to workers' compensation is pertinent and necessary, such as challenging the credibility of the plaintiff's testimony. The court held that the practice of allowing the admission of workers' compensation evidence for the limited purpose of showing a plaintiff's disinclination to work was appropriate.

Appellants also rely on *Eichel v. New York Central Railroad Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), in support of their position that evidence of workers' compensation benefits is inadmissible either as bearing on the extent or duration of the injury or to show a motive for not returning to work. However, *Eichel* is obviously distinguishable from the instant case and supports our holding that evidence of workers' compensation benefits is inadmissible for the *sole* purpose of attempting to reduce the amount of a plaintiff's recovery.

In *Eichel,* the bare fact that the plaintiff had received $190 a month in disability payments, which was offered for the purpose of impeaching his testimony as to his motive for not returning to work and as to the permanency of his injuries, was held inadmissible by the trial court. *Eichel* does not refer to any other evidence that corroborated the fact that plaintiff's receipt of disability payments had any effect on plaintiff's motive for not returning to work or to show the nature and extent of his injuries. Obviously, the purpose for introducing evidence of the plaintiff's receipt of monthly disability payments was for the sole—and improper—purpose of reducing the amount of the plaintiff's recovery.

Thus, it is apparent that strict adherence to the language of HRS § 386–8, as urged by the appellants, would lead to absurd and unjust results, depending on the circumstances presented. By adopting a blanket prohibition of workers' compensation evidence, a jury could be precluded from considering relevant evidence that would result in a verdict based on incomplete and misleading facts and could potentially result in a distorted and unjust verdict. Such a result would frustrate the fundamental purpose of a trial, which is to provide the finder of fact with all relevant evidence on the issues to be determined.

For example, in *Lange v. Missouri Pacific Railroad Co.,* 703 F.2d 322 (8th Cir.1983), an injured railroad employee brought a negligence action against the Missouri Pacific Railroad Company, alleging failure to maintain the railroad car in a reasonably safe condition. At trial, the plaintiff-employee testified on direct examination by his attorney that he returned to work immediately after undergoing surgery for his back injury because he had to support his family and had no savings or disability income. On cross examination, defense counsel elicited testimony from the plaintiff-employee that he had applied for workers' compensation benefits several months after the surgery and had received a lump sum payment retroactive to the date of the surgery. The jury found in favor of the defendant-railroad company, and the plaintiff-employee appealed.

On appeal, the plaintiff-employee asserted that the district court erred in admitting the evidence of the workers' compensation benefits he had received. In approving the admission of the evidence, the Eighth Circuit Court of Appeals stated:

> The Arkansas Supreme Court has also approved the introduction of evidence on collateral source payments when it is relevant to some issue in the case. The payments become relevant when the plaintiff's direct testimony *misleads the jury on some issue in the case* and cross-examination of the plaintiff on *evidence of collateral source payments is necessary to rebut the testimony.*

*Id.* at 324 (emphasis added) (citation omitted).

■ As previously noted, the medical testimony of Sato's own treating physicians and other corroborating evidence indicated a reason for not returning to work distinct from his complaints of pain. By precluding Tawata from advising the jury of Sato's receipt of workers' compensation benefits that approximated his pre-accident salary, the jury would have had no explanation of Sato's reason or reasons for not returning to gainful employment *except for his alleged disability*, for which no objective basis could be found. Clearly, under the circumstances of this case, the probative value of the evidence substantially outweighed the danger of unfair prejudice. Therefore, we hold that the trial court did not abuse its discretion in admitting the evidence.[5]

Furthermore, the record indicates that the trial court complied with the directive in *Powers*, that is, where evidence of workers' compensation is allowed, "irrelevance or limited relevance of the compensation award to a present recovery should be explained to [the jury]...." *Powers*, 250 S.C. at 156–57, 156 S.E.2d at 762 (citations omitted). At the conclusion of trial, the court instructed the jury that:

> [i]t may have come to your knowledge through the evidence in this case that Russell Sato has received workers' compensation benefits. You must not reduce the award of damages by any amount of workers' compensation benefits received by Russell Sato.
>
> From the judgment in this case, Russell Sato is required to reimburse his employer for the amount of workers' compensation benefits he received.

Plaintiff's Instruction Nos. 19 and 18, respectively (given as modified by agreement). "As a rule, juries are presumed to be reasonable and follow all of the trial court's instructions." *Montalvo v. Lapez*, 77 Hawai'i 282, 301, 884 P.2d 345, 364, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994) (internal quotation marks and citation omitted). Our review of the record in the present case indicates that there was substantial evidence to support the jury's verdict. We have stated that

> we are bound by the general rule that "a finding of an amount of damages is so much within the exclusive province of the

**5.** Although the dissent declares that "HRS § 386–8 mandates that the amount of workers' compensation benefits paid by the employer is inadmissible in evidence in any third party actions brought to recover damages[,]" dissenting opinion at 23–24, 897 P.2d at 950–51, it recognizes exceptions: "[1] if Sato testified on direct examination that his workers' compensation benefits only represented a small percentage of his actual wages or [2] he has not received any form of benefits[.]" *Id.* at 25, 897 P.2d at 952. In these hypotheticals, the dissent acknowledges that "justice would require," *id.*, admitting the amount of compensation paid because "[i]t would be absurd and contrary to the purpose of HRS § 386–8 to allow Sato to *mislead the jury in an attempt to increase the amount of his recovery*." *Id.* at 26, 897 P.2d at 953 (emphasis added).

For the dissent to concede that the mandatory language of HRS § 386–8 would not prohibit the admissibility of the amount of workers' compensation benefits in the above hypotheticals, while at the same time to view the evidence as inadmissible under the circumstances of this case, is incongruous. We note that the dissent does not challenge the majority's view that to rule inadmissible the amount of workers' compensation benefits under the circumstances of this case would be absurd and unjust. The dissent only states that "Tawata could have introduced other

evidence having more probative value and less likelihood of prejudice.... such as: (1) Dr. Rogers's testimony that Sato was capable of returning to part-time sedentary work as early as August 1990; (2) the fact that Sato was also able to drive his wife to work; and (3) the fact that Sato volunteered at the Mo'ili'ili Community Center, where he cooked, shopped, and exercised with his elderly clients." *Id.* at 25, 897 P.2d at 952.

In order to render a just and reasonable verdict, the trier of fact in any personal injury case must determine the nature and extent of the plaintiff's injuries and damages, which necessarily include the plaintiff's reasons or motives in seeking monetary damages for items such as loss of future earnings. Clearly, the fact that Sato was capable of engaging in certain physical activities, which obviously were not as strenuous as driving a delivery truck for several hours a day, is not directly probative as to the truth or falsity of Sato's reasons or motives for not returning to work. Because the dissent's stated purpose for admitting the amount of workers' compensation benefits under its hypotheticals is identical to the majority's reasoning for allowing the admission of such evidence under the circumstances of the present case, that is, not "to allow Sato to lie or directly mislead the jury in an attempt to increase the amount of recovery," *id.* at 26, 897

jury that it will not be disturbed on appellate review unless palpably not supported by the evidence, or ... as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them." *Quedding v. Arisumi Bros., Inc.,* 66 Haw. 335, 339, 661 P.2d 706, 709 (1983) (quoting *Vasconcellos v. Juarez,* 37 Haw. 364, 366 (1946) (other citations omitted)). Based on all of the evidence presented, we do not believe that the jury's award of damages is "palpably not supported" or that the jury "acted against rules of law" or that the jury was mislead by their "passions or prejudices."

### III. CONCLUSION

Based on the foregoing, we hold that, notwithstanding the language of HRS § 386–8, disclosure of workers' compensation evidence, including the amount, may be appropriate where some relevant purpose for allowing its admission develops in the trial. Because, on the record before us, there was a relevant basis for admitting the evidence of Sato's receipt of workers' compensation, and the probative value of the evidence substantially outweighed the danger of unfair prejudice or confusion, we hold that the trial court did not abuse its discretion in admitting the evidence. Accordingly, the judgment by special verdict as well as Tawata's award of costs are affirmed.

RAMIL, Justice, dissenting.

Because the majority's analysis ignores the clear and unambiguous language of Hawai'i Revised Statutes (HRS) § 386–8 (1985), which provides in relevant part that "the *amount* of compensation paid by the employer ... *shall* not be admissible in evidence in any action brought to recover damages," I respectfully dissent. (Emphases added.) The majority holds that, "notwithstanding the language of HRS § 386–8, disclosure of workers' compensation evidence, *including the amount [of compensation paid by the*

employer], may be appropriate where *some relevant purpose* for allowing its admission develops in the trial." Majority opinion at 22, 897 P.2d at 949. By allowing the admission of the amount or the approximate amount of workers' compensation paid by the employer, the majority undermines the purpose of third party actions as codified in HRS § 386–8 and increases the likelihood of misuse of such evidence by the jury, thereby providing a potential windfall for third party tortfeasors to the detriment of injured employees and employers.[1]

### I. APPLICABLE RULES OF STATUTORY CONSTRUCTION

The first cardinal rule of statutory construction is that "legislative enactments are presumptively valid and[, if possible, every word, clause, and sentence of a statute] should be interpreted in such a manner as to give them effect." *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 54, 868 P.2d 1193, 1201 (citation, internal quotation marks, and internal brackets omitted), *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994). *See also Methven–Abreu v. Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 392, 834 P.2d 279, 284, *reconsideration denied,* 73 Haw. 625, 838 P.2d 860 (1992) ("[C]ourts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if construction can be legitimately found which will give force to and preserve all the words of the statute.") (citation omitted).

Absent any constitutional obstacles in applying the law, this court's chief duty is "to ascertain and give effect to the legislature's intention to the fullest degree," which is "obtained primarily from language contained in the statute itself." *Sol v. AIG Hawaii Ins. Co.,* 76 Hawai'i 304, 307, 875 P.2d 921, 924 (citation and internal quotation marks omitted), *reconsideration denied,* 76 Hawai'i 353, 877 P.2d 890 (1994), and *Kam v. Noh,* 70

---

P.2d at 953, the position taken by the dissent is perplexing.

**1.** HRS § 386–8 preserves an employee's right of action in common law or under a statute against a third party tortfeasor. *Hun v. Center Properties,*

63 Haw. 273, 276, 626 P.2d 182, 185 (1981). In addition, § 386–8 permits, *inter alia,* the employer to recover compensation paid to the employee for work injuries caused by a third party tortfeasor. *Berkness v. Hawaiian Elec. Co.,* 51 Haw. 437, 440, 462 P.2d 196, 198 (1969).

Haw. 321, 325, 770 P.2d 414, 416 (1989). When a law is enacted, "a presumption exists that the words [in the statute] express the intent of the legislature." Sutherland Statutory Construction § 46.04 at 98 (5th ed. 1992) (citation omitted).

Although "departure from a literal construction of a statute is justified when such construction would produce an absurd result and ... is clearly inconsistent with the purposes and policies of the act," this court may not reject generally unambiguous language "if construction can be legitimately found which will give force to and preserve all the words of the statute." *Richardson*, 76 Hawai'i at 60, 868 P.2d at 1207; *see also Methven–Abreu*, 73 Haw. at 392, 834 P.2d at 284. "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction and illogicality." Sutherland Statutory Construction § 46.07 at 131 n. 8 (citation omitted). If such construction is reasonably possible, this court "must presume [that the legislature] meant what it said" and is further barred from rejecting otherwise unambiguous statutory language—absent some compelling evidence to the contrary, *e.g.*, "unmistakable support in the history and structure of the legislation." *Richardson*, 76 Hawai'i at 57, 868 P.2d at 1204. Here, the majority admits that "[u]nfortunately, the legislative history of HRS § 386-8 provides little guidance as to the statute's underlying policy." Majority opinion at 18, 897 P.2d at 944.

## II. *DISCUSSION*

The dispositive issue on appeal is whether the circuit court erred when it admitted evidence that Russell Sato's workers' compensation benefits approximated his pre-accident salary in light of the clear and unambiguous language of HRS § 386-8 (1985).

### A.

The language of HRS § 386-8 (1985) is plain and unambiguous and provides in relevant part:

**Liability of third person.** When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) *may* claim compensation under this chapter and recover damages from such third person.

. . . .

*The amount of compensation paid by the employer* or the amount of compensation to which the injured employee is entitled *shall not be admissible in evidence in any action brought to recover damages.*[2]

(Emphases added.)

Although the use of the word "shall" is generally mandatory, it is not necessarily dispositive of the issue and has been considered directory in certain situations. *In re Fasi*, 63 Haw. 624, 626, 634 P.2d 98, 100–01 (1981) (citation omitted). However, where the words "shall" and "may" are used in close juxtaposition within a statute, the terms carry their ordinary meaning. *Pele Defense Fund v. Puna Geothermal Venture*, 8 Haw. App. 203, 212, 797 P.2d 69, 73 (1990) (citing *In re Fasi*, 63 Haw. 624, 634 P.2d 98 (1981)). Thus, in the instant case, because the term "shall" and "may" appear throughout HRS § 386–8, one should infer that the legislature intended each term to carry its ordinary meaning. *See Pele Defense Fund*, 8 Haw. App. at 212, 797 P.2d at 73 (giving "may" its ordinary meaning because "both the statute and Rule use the words 'shall' and 'may' throughout").

Accordingly, HRS § 386–8 mandates that the amount of workers' compensation benefits paid by the employer is inadmissible in

---

**2.** The inadmissibility of such evidence is completely consistent with the concept underlying third party actions—that a third party tortfeasor should pay exactly the damages he or she would normally pay, since reducing his or her burden because of the relation between the employer and the employee would be a windfall to the tortfeasor. *See* 2A A. Larson, *Larson's Workmen's Compensation Law*, §§ 71.10, 71.20 (1993).

evidence in any third party actions brought to recover damages.

However, in the instant case, defendant-appellee Stephanie Tawata maintains that during cross-examination, Dr. Basting did not testify as to the "actual amount" of workers' compensation benefits received by Sato. Tawata argues, *inter alia*, that Dr. Basting only testified that Russell's workers' compensation benefits "approximated" his pre-accident salary, and, therefore, that HRS § 386–8 was not violated. Tawata contends that HRS § 386–8 applies only in situations where a party seeks to introduce as evidence the specific amount of workers' compensation benefits received.

Tawata's argument places form over substance. Section 386–8 states that the amount of compensation paid by an employer is inadmissible. Dr. Basting's testimony that the compensation "approximated" Russell's pre-accident salary was sufficient to bring the testimony within the purview of § 386–8.

This is especially true in light of the fact that the jury was presented with the amount of Russell's salary and was then told that his workers' compensation benefits approximated his salary. Based on this information, the jury could infer the amount of workers' compensation benefits received by Sato from his employer. This was a violation of the clear and unambiguous language of HRS § 386–8. Therefore, because HRS § 386–8 renders inadmissible evidence that Russell's workers' compensation benefits approximated his pre-accident salary and because the circuit court erred by admitting such evidence in the presence of the jury, I would vacate the judgment by special verdict and Tawata's award of costs and remand this case for a new trial.

### B.

However, "notwithstanding the language of HRS § 386–8," the majority opinion holds that "[the] disclosure of workers' compensation evidence, *including the amount [of compensation paid by the employer]*, may be appropriate where some relevant purpose for allowing its admission develops in the trial." Majority opinion at 22, 897 P.2d at 949. For, the reasons set forth below, I disagree.

1.

First, the majority states:

[W]here evidence of workers' compensation benefits is relevant, that is, where some other basis for its admission exists, such as the credibility of witnesses, the trial court must exercise its discretion under Hawai'i Rules of Evidence (HRE) Rule 403 (1985) to determine whether to admit such evidence[, such as the amount of workers' compensation paid by the employer.]

Majority opinion at 18, 897 P.2d at 945 (footnote omitted). In other words, because the specific amount of workers' compensation paid by the employer may become relevant in third party actions,[3] the majority asserts that trial judges may admit such evidence when such relevant situations develop pursuant to HRE Rule 403.

However, HRE Rule 402 (1985) provides in relevant part: "[a]ll relevant evidence is admissible, *except as otherwise provided* by the Constitution of the United States and the State of [Hawai'i], *by statute*, by these rules, or by other rules adopted by the supreme court." (Emphases added.) *See Kealoha v. County of Hawaii*, 74 Haw. 308, 315, 844 P.2d 670, 674 (1993) ("HRE 402 states unequivocally that, subject only to certain explicit exceptions, 'all relevant evidence is admissible[.]'").

HRS § 386–8 clearly provides such an exception. As discussed *supra*, HRS § 386–8 (1985) provides, in relevant part, that "the *amount* of compensation paid by the employer ... shall not be admissible in evidence in any action brought to recover damages." (Emphasis added). It goes without saying that, in HRS § 386–8, the legislature was referring to "relevant evidence." Thus, in

---

**3.** Although asserting that relevant evidence of workers' compensation is admissible in third party actions, the majority clarifies that such evidence is inadmissible "for the sole purpose of attempting to reduce the amount of any recov-

ery." Majority opinion at 18, 897 P.2d at 944 (quoting *Powers v. Temple*, 250 S.C. 149, 157, 156 S.E.2d 759, 763 (1967) (emphasis omitted)). *See* discussion of *Powers, infra*, at 11 n. 4.

enacting this statute, the legislature weighed the danger of prejudicing the jury against the probative value of relevant evidence of workers' compensation benefits paid by the employer. As evidenced by the plain language of HRS § 386-8, the legislature made the "judgment call" that the likely misuse by the jury substantially outweighs the possible probative value of such evidence in third party actions. Accordingly, because the legislature unequivocally intended to exclude the amount of workers' compensation benefits paid by the employer in third party actions, I would hold that trial courts generally have no discretion to admit such evidence pursuant to HRE Rule 403.

2.

Second, the majority asserts that:

By adopting a blanket prohibition of workers' compensation evidence, a jury could be precluded from considering relevant evidence that would result in a verdict based on incomplete and misleading facts and could potentially result in a distorted and unjust verdict. Such a result would frustrate the fundamental purpose of a trial, which is to provide the finder of fact with all relevant evidence on the issue to be determined.

Majority opinion at 20, 897 P.2d at 947. More specifically, the majority contends that evidence of the specific or approximate amount of workers' compensation must be admissible for certain relevant purposes, *e.g.*, the credibility of witnesses, despite the language of HRS § 386-8. Majority opinion at 18, 897 P.2d at 945. In short, the majority seems to believe that it is inconceivable to give effect to the language of HRS § 386-8 without producing absurd results, such as unjust verdicts based on misleading evidence and distorted versions of the truth. *See* Majority opinion at 20, 897 P.2d at 947.

Contrary the majority's opinion, it is possible to give effect to the language HRS § 386-8 without producing an absurd result. For example, in the instant case, Sato claimed that he could not return to work solely because of the disability he suffered as a result of the prior automobile accident.

However, because evidence suggested that there was no physiological basis for Sato's pain, Tawata sought to challenge Sato's credibility regarding his motive for not returning to work. Specifically, Tawata was allowed to introduce evidence about the specific or approximate amount of workers' compensation paid by Sato's employer in order to prove that it may have been a factor in his not returning to work.

In light of the clear and unambiguous language of HRS § 386-8, the trial court in the instant case should have denied Tawata's request to admit such evidence because Tawata could have introduced other evidence having more probative value and involving less likelihood of prejudice. For example, Tawata introduced other evidence such as: (1) Dr. Rogers's testimony that Sato was capable of returning to part-time sedentary work as early as August 1990; (2) the fact that Sato was also able to drive his wife to work; and (3) the fact that Sato volunteered at the Mo'ili'ili Community Center, where he cooked, shopped, and exercised with his elderly clients.

Because it is reasonably possible to give full effect to the language of HRS § 386-8 without leading to an absurd result, the trial court should have "presume[d that] [the legislature] meant what it said" and refused to admit the evidence regarding the amount or approximate amount of workers' compensation paid by Sato's employer. *Richardson*, 76 Hawai'i at 57, 868 P.2d at 1204.

I only see one situation in which giving full effect to the words of HRS § 386-8 would produce an absurd result, and departure from a literal construction of the statute is justified. The situation arises when the injured party raises or "opens the door" to the issue of the amount or approximate amount of workers' compensation paid by the employer. For example, in the instant case, if Sato testified on direct examination that his workers' compensation benefits only represented a small percentage of his actual wages or he has not received any form of benefits, justice would require that Tawata be given the opportunity, if desired, to cross-examine Sato and impeach him about the specific or approximate amount of workers' compensa-

tion actually paid by his employer. It would be absurd and contrary to the purpose of HRS § 386–8 to allow Sato to lie or directly mislead the jury in an attempt to increase the amount of his recovery. Thus, in my view, "[t]he amount of compensation paid by the employer ... shall not be admissible" unless such evidence is used for the narrow purpose of rebutting direct testimony on the issue. *See* HRS § 386–8 (1985).

However, because Sato did not introduce on direct examination evidence regarding the amount or approximate amount of workers' compensation paid by the employer, the trial court was barred from rejecting the otherwise clear and unambiguous statutory language of HRS § 386–8. In addition, because the provision regarding the inadmissibility of the amount of workers' compensation benefits is mandatory, the trial court cannot correct it by a jury instruction limiting the admissibility of such evidence. *Aspinwall v. Tanaka,* 9 Haw.App. 396, 405, 843 P.2d 145, 149 (1992), *cert. denied,* 74 Haw. 651, 845 P.2d 1193 (1993) (citing *Jack Endo Elec., Inc. v. Lear Siegler, Inc.,* 59 Haw. 612, 616, 585 P.2d 1265, 1269 (1978)) (if a statute is mandatory, the failure to follow it renders the proceedings to which it relates illegal and void). Accordingly, because the trial court improperly admitted evidence of the approximate amount of workers' compensation paid by Sato's employer, the trial was illegal and therefore void. *See Aspinwall,* 9 Haw.App. at 405, 843 P.2d at 149.[4]

### III.  *CONCLUSION*

Because there is no unmistakable support in the history or the structure of HRS

§ 386–8 to justify a departure from the clear and unambiguous language of the statute in this case, I would conclude that the circuit court erred when it admitted evidence of the approximate amount of Sato's workers' compensation benefits. Accordingly, I would vacate the judgment by special verdict and Tawata's award of costs and remand this case for a new trial.

---

4. The majority cites only one jurisdiction with a statute virtually identical to HRS § 386–8. Majority opinion at 18, 897 P.2d at 953 (citing *Powers v. Temple,* 250 S.C. 149, 157, 156 S.E.2d 759, 763 (1967) (speculating on the purpose and intent of a statute virtually identical to HRS § 386–8)). However, I believe that the majority's reliance on *Powers* is misplaced. First, the *Powers* court declares the statutory intent *ipse dixit.* Secondly, the *Powers* court ignores a fundamental tenet of statutory construction by entirely ignoring the clear and unambiguous text of their statute and, instead, utilizes the collateral source rule. *Cf. Dines v. Pacific Ins. Co.,* 78 Hawai'i 325, 337, 893 P.2d 176, 188 (Ramil, J., joined by Moon, C.J., dissenting) ("Statutory construction dictates that an interpreting court should not [generally] fashion a construction of statutory text that effectively renders the statute a nullity.... It goes without saying that a legislature does not go through the enactment process to accomplish absolutely nothing[.]"), *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995). Because it is rational and practicable to give full effect to the text in HRS § 386–8, the majority's reliance on *Powers* is inapposite. *See Methven–Abreu,* 73 Haw. at 392, 834 P.2d at 284 ("if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant") (citation omitted).